## MARY LOUISE MURPHY et al. *vs.* NANNIE E. COALE et al.

*Construction of a Will—Power of Executors to Make Sale for Re-Investment—Former Adjudication—Unborn Remaindermen.*

A testator devised the residue of his estate to his four daughters and two sons, and directed that their shares should be invested by his executors in ground rents or in Baltimore City stock in the names of his children respectively; the shares of the daughters to enure to their separate use for life so that they might take the profits thereof, with remainders at their decease respectively to their children, and in default of children to their brothers and sisters and their descendants. The shares of the

two sons were given to them absolutely upon their coming of age. Power was given to the executors of investing and re-investing the money of the children, and the will directed that the estates of the children should be managed by their guardians until they reach the age of twenty-one. The testator's estate was settled by the executors, and the shares of the daughters were invested in Baltimore City stock and in ground rents in their names, subject to the provisions of the will. In 1892 a decree was made in an equity cause, to which the testator's sons were not parties but only the daughters, by which it was adjudged that the surviving executrix had the power to sell the city stock standing in the names of the daughters for the purpose of re-investment. No appeal was taken from this decree. In 1907 the present bill was filed, to which all of the children of the testator were parties, asking for a construction of the will and the determination of the question whether the executrix had the power to sell said ground rents for the purpose of re-investment. *Held*, that the power given to the executors to invest and re-invest the shares of the daughters ceased upon the settlement of the estate, when said shares had been ascertained and invested as directed, and that the ground rents in which these shares are now invested cannot be sold so as to pass the interests of the contingent remaindermen therein after the life estates, except by a proceeding under Code, Art. 16, sec. 213, relating to the sale of real estate in which there is an estate for life with remainders over.

*Held*, further, that, although the decree in the former case in 1892 was an adjudication of the question in this case as to the power of the executrix to make sale, and is binding upon the parties to the cause and those who having knowledge of it and a right to intervene neglected to do so, yet it is not binding on the unborn contingent remaindermen.

A decree adjudging that an executrix had the power to sell for re-investment property in which there was a life estate with the remainders over, although binding upon the parties to the cause, is not binding upon the remaindermen, and such decree does not make the question *res adjudicata*, when it is subsequently raised.

*Decided January 15th, 1908.*

Appeal from the Circuit Court of Baltimore City (Elliott, J.)

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Thomas and Worthington, JJ.

*Clarence K. Bowie* (with whom was *D. K. Este Fisher* on the brief), for the appellants.

*John Watson, Jr.,* for the appellees.

THOMAS, J., delivered the opinion of the Court.

John Murphy, of Baltimore City, died in 1880, leaving a last will and testament, by which he directed his executors therein named to sell all his property, and after the payment of his "debts and funeral and testamentary expenses," to divide the remainder of his estate, provided it did not exceed the sum $120,000, among his six children, viz: Mary Louise, Mary Cecilia, Frank K., Nannie Eulalia, Charles and Alice Margaret Murphy, "share and share alike."

The third, sixth, seventh, eighth and ninth paragraphs of the will are as follows:

"3rd. It is my desire that the estate and moneys hereinbefore given to my children subject to my wishes hereafter expressed, shall be invested by my executors or their guardians respectively, as the case may be, in secure fee-simple ground rents or Baltimore City stock, in the names of my said children respectively. The shares of my daughters to be and enure to their sole, separate and exclusive use for life, so that they may take the rents, issues and profits thereof, without the intervention or control of any husbands whom they may marry; remainder at their decease respectively to their children or descendants (to take *per stirpes*) and in default of such children or descendants living at their death, then to their brothers and sisters and the descendants of such (to take *per stirpes*.)

"Should any of my said children die before me, without leaving lawful issue who shall survive me, or should any of my said children die after me, before reaching twenty-one, without leaving lawful issue then respectively surviving, the share or shares of such child or children shall pass equally to their brothers and sisters and descendants (to take *per stripes*) of any who may have previously died, leaving lawful issue surviving them."

"6th. Having entire confidence in the judgment, integrity and friendship of my executors hereinafter named, I leave entirely to their discretion (subject however to the provisions hereinafter contained) the time and mode of closing up my

business, and realizing my estate as hereinbefore provided as well as of investing the moneys of my children and reinvesting the same if required. I shall have a general statement of my property and affairs, with certain indications of my ideas and wishes in respect thereto, but I desire it understood, that I mean the same merely as suggestions, and not in any way to control the deliberate judgment of my executors, should they, under the circumstances then existing, differ with me in opinion. For their trouble in settling my estate and looking after the interests and investing the property of my children, it is my desire that my executors shall be allowed the usual commission."

"7th. As it is my will and desire that the business which I have established, and I am now engaged as a printer, publisher, bookseller and stationer, shall, if possible, be perpetuated under the same name and style of John Murphy & Co., I desire it to be continued and hereby qualify the foregoing provisions, in order that it may be continued, for the benefit of my estate, under the direction and management of my executors hereinafter named, until such time, as my son Francis K. Murphy, if he survives me, shall arrive at the age of twenty-one years, which will be on the sixth day of August, in the year eighteen hundred and eighty, at which time, or as soon thereafter (not exceeding six or twelve months) as in their judgment, my executors may deem it expedient, I desire that the business on the part of the estate shall be discontinued, unless, in the meantime, from ill health, or any other cause, my son Francis shall be unable to, or does not in the judgment of my executors, give such attention to the business as shall be proper and necessary, in which case I desire that the business, on the part of the estate, shall be closed and wound up as soon as may be practicable, consistently with proper prudence, and that the portion of my property, consisting of the printing office and all appertaining to it; the stereotype plates and copyrights appertaining to them, the steel plates, wood engravings, brass stamps, &c., &c., and all the stock, consisting of books paper, stationery and all matters appertaining thereto,

shall be valued by careful and discreet persons of judgment in such matters. After ascertaining the value thereof, my executors shall sell or dispose of the same in such manner as to them may seem best and safest, and as promptly as may be, without incurring sacrifice."

"8th. If, at the time specified above, (that is, on his reaching twenty-one, or within six or twelve months thereafter as aforesaid) my son Francis shall be in the enjoyment of good health, and it shall be his desire to continue the business, and he shall manifest capacity, therefor and attention thereto as aforesaid, in the judgment of my executors,—the portion due to him as his share in the estate shall be paid to him in the stock and in the valuation aforesaid, and, in the discretion of my executors, they may sell to him, at the assessed value, any portion or the whole of the same over and above his proportionate share of said stock taking mortgage or security for the whole excess beyond the portion due to him, or, if they deem it to the interest of my children aforesaid, they may continue the business in connection with my son Francis, for such time as in their judgment, they may deem best."

"9th. I desire that the estate of my children, female as well as male, shall be managed by their guardian or guardians, until they reach the age of twenty-one, or are married. Should any of my children marry before reaching twenty-one, they shall still be entitled only to the rents and profits of their estates respectively, and the same shall remain under the control of their guardians, unless the latter should deem it prudent and safe to let them manage the same themselves; without power, however, of alienation or disposition of the principal or any power of anticipation, until they respectively reach their majority."

By the 11th paragraph of his will the testator appointed Thomas C. Yearly, Benjamin G. Harris and his daughter, Mary Louise Murphy, executors, and provided that "should any of them die before the entire fulfillment of the trusts herein confided to them, it is my desire that my friends shall take their place from time to time in the order in which they

are named." He also appointed Mary Louise Murphy, and, in case of her death, Mary Cecelia Murphy, guardian of his children.

In 1892, Mary Cecelia Murphy, Alice M. Murphy, Nannie E. Coale, and Thomas E. Coale, her husband, filed in the Circuit Court of Baltimore City their bill of complaint against Mary Louise Murphy "in her own right as executrix of the last will and testament of John Murphy, deceased," alleging that letters testamentary had been granted to Mary Louise Murphy, Thomas C. Yearly and Benjamin G. Harris, the executors named in the will; that the estate had been finally settled; that said Thomas C. Yearly had since died and that "said Harris had resigned the office" of executor; that in pursuance of the directions of said will they had made certain investments in Baltimore City stock in the names of the testator's daughters, subject to the provisions of his will; that it was desirable to sell said stock and to reinvest the proceeds of such sales, "but neither the said Mary Louise Murphy, the executrix, alone, or the executrix in conjunction with the children of the testator have been able to procure the Mayor and City Council of Baltimore to transfer the said stock, inasmuch as it has maintained that the construction of said last will and testament was not sufficiently clear to enable it to make said transfer without the protection of an order of the Orphans' Court of Baltimore City or the decree of a Court of equity;" that the plaintiffs were advised that the power conferred by said will upon "Mary Louise Murphy, the surviving executrix, to change said investments and to reinvest the funds in her discretion," and praying "that a construction may be placed upon the said last will and testament, and that it may be decreed that the said Mary Louise Murphy, the executrix as aforesaid, is entitled from time to time to sell, dispose of and transfer the said securities which have been placed in the names of the daughters of the testator for reinvestment, and to reinvest the fund."

Mary Louise Murphy answered the bill claiming that the power was conferred upon her, as executrix, by said will to

dispose of the investments made by the executors of the shares of the testator's daughters and to reinvest the fund, and on the 29th day of April the Court passed the following decree:

. "This cause standing ready for hearing and having been submitted for decree, and proceedings and evidence having been read and considered, it is, this 29th day of April, A. D. 1892, by the authority of the Circuit Court of Baltimore City, adjudged, ordered and decreed that by the true construction of the last will and testament of the late John Murphy, the executrix of his will, the defendant, Mary Louise Murphy, was empowered to make changes in the investments made by her of the shares of the daughters of the testator; and it appearing also from the evidence that it would be advantageous that a change should be made as to that part of the estate of the daughters of the testator, consisting of the stock of the city of Baltimore; it is further adjudged, ordered and decreed that the certificates of the five per cent stock of the city of Baltimore standing in the names of the plaintiffs, Mary Cecelia Murphy, Alice M. Murphy, Nannie E. Murphy, now Nannie E. Coale, under the will of John Murphy, deceased, as with similar words identifying said certificates with the estate of the late John Murphy, be endorsed by them respectively for transfer to the defendant, Mary Louise Murphy, as said executrix, and that she endorse her own certificates in the same manner, and that the same be then transferred into her name as executrix of the will of the said John Murphy on the books of the city of Baltimore, and that the defendant, executrix as aforesaid, shall then proceed to sell said stock at the Broker's Board in the city of Baltimore, and immediately report such sales to this Court for its further direction with respect to the investments of the proceeds thereof."

No appeal was taken from this decree, but on the 3rd of October, 1907, Mary Louise Murphy, "individually and as the executrix of the last will and testament of John Murphy, deceased," Alice M. Murphy and Mary Cecelia Murphy filed their bill of complaint in the Circuit Court of Baltimore City against Nannie Coale, Thomas E. Coale, her husband, Francis

K. Murphy and Charles Abell Murphy, alleging, in addition
to the facts stated in the bill filed in 1892, the proceedings
and decree in that case; that among the investments of the
shares of the daughters of the testator were certain ground
rents standing in their names, subject to the provisions of said
will; that it is important for the protection of the shares of the
testator's daughters from loss that there should be a power
in some one, "without the expense and delay of proceedings
in Court," to make sales of the investments thereof, and to
reinvest the proceeds of sales, and that it is manifest from the
terms of the will that this fact was in the mind of the testator,
and that he intended that such a power should exist; that
acting upon the belief that said power of sale and re-invest-
ment was vested in Mary Louise Murphy, the executrix, she
had on several occasions offered for sale some of the said
ground rents, and on each occasion objection was made that
she had either no power at all to sell, or that she could not
make the sale without the authority of either the Orphans'
Court or a Court of equity; that said executrix has made sale
of "the ground rent of $70 on No. 402 East 20th street
(northeast corner Twentieth and Barclay streets) and holds a
contract for the purchase thereof signed by Caughy, Hearn &
Carter, Agents, and a deposit on account thereof of $100, and
that they raised the objection after the delivery of the con-
tract of sale and purchase that a proceeding in equity (inde-
pendent of the one in this Court hereinbefore referred to) was
necessary in order to make title to said rent, because (as they
claim) of lack of sufficient power to make title without such a
proceeding, and that said sale remains uncompleted and in
abeyance;" that an offer had been made for the ground rent
of $180 upon the property "Nos. 207–9–11 North street" and
that it would be to the advantage of all persons interested to
sell said ground rents of $70 and $180, and praying the Court
to construe the will, and to determine whether there is any
power of sale of the investments of the shares of the testator's
daughters, and upon whom it is conferred, and whether it can
be exercised from time to time without application to any

Court, and that said ground rents of $70 and $180 may be sold and said contract of sale may be confirmed. The answers of the defendants admit the facts alleged in the bill, and admit that the construction of the will and the sale of the ground rents sought by said bill would be advantageous to all concerned, and the Court passed in said case the following decree.

"This cause coming on for hearing upon the pleadings and evidence and it appearing to the Court that the plaintiffs are entitled to relief and that the decree passed in the case of *Murphy* v. *Murphy* by this Court referred to in the bill of complaint so far as it construed the will of John Murphy dealt with the power of changing investments only during the period of administration.

"It is thereupon by the Circuit Court of Baltimore City this 5th day of October, 1907, adjudged, ordered and decreed that by the true construction of said will it was the intention of the testator that each of his daughters, after attaining majority should have the management of her own share of the testator's estate and the possession thereof subject to the limitations in remainder and power to change, from time to time, the investments thereof, and that each of the testator's daughters now has and is entitled to exercise said control and power of changing investments, and to make all sales, conveyances and assignments necessary or appropriate for that purpose, it appearing further to the Court that each of them has attained her majority. And it is further adjudged, ordered and decreed that the action of the Court upon the other relief sought by said bill be and the same is hereby reserved for future determination."

· From this decree Mary Louise Murphy, individually and as executrix and Frank K. Murphy and Charles A. Murphy have appealed.

It is evident from the provisions of the seventh and eighth paragraphs of the will that the testator contemplated that his estate might be kept open for a considerable time, and that he thought that during that time, and until the estate was

finally settled, it was necessary in order to protect his estate and the interest of his children that power should be given to some one to invest and reinvest the same. So by the sixth paragraph of his will he leaves to the discretion of his executors, to whose discretion he left (subject to the provisions contained in the seventh and eighth paragraphs of his will), "the time and mode of closing up" his business "and realizing" his estate, the investing and reinvesting the "moneys" of his children. When his business was closed up and his estate was finally settled, he directed the shares of his children to be invested "in secure fee-simple ground rents, or Baltimore City stock, in the names of my said children respectively," and to be managed by their guardians until they reach the age of twenty-one years. The shares of his two sons were given to them absolutely upon their arriving at the age of twenty-one years, so the testator evidently did not mean the power to invest and reinvest, if he intended that power to be exercised by his executors after the settlement of his estate, to apply to their shares, yet the power given them refers to the *moneys of his children.* By the express terms of his will he commits to their guardians the management and control of his children's shares until they reach the age of twenty-one years, which control could not begin, of course, until after the settlement and distribution of the estate by his executors. Therefore the power given to his executors to invest and reinvest must have referred to the period during which they were engaged in the settlement of his estate, and was not intended to apply to the shares of his children, after said shares were ascertained and invested, as directed by the will.

But the appellants contend that the appellees are estopped by the decree passed in 1892 from raising any question as to the power of the executrix to dispose of the investments of the shares of the testator's daughters, while the appellees insist that they are not bound by that decree because the sons of the testator, two of the appellants, were not parties to that suit. It is clear from the allegations of the bills and the decrees that the question presented in this case is the precise question

passed upon and determined by the decree of 1892. The
Court having determined by that decree that the power was
vested in Mary Louise Murphy, executrix, that decree is bind-
ing not only upon the parties to that suit, but upon all persons
who had an interest in that suit, and who, with the knowledge
of the pendency of the suit, refused or neglected to take part
in it. *McKinzie* v. *B. & O. R. R. Co.*, 28 Md. 161; *Oursler*
v. *B. & O. R. R. Co.*, 60 Md. 367; *Trayhern* v. *Coulbourn*, 66
Md. 277; *Albert* v. *Hamilton*, 76 Md. 310. The appellants,
Frank K. Murphy and Charles Abell Murphy, were not par-
ties to that suit, and it does not appear from the record in this
case that they had any knowledge of it, and if in this case
they were disputing and resisting the force and effect of said
decree they could not be held to be bound by it. *Handy* v.
*Waxter*, 75 Md. 517. Here however they are not resisting
the decree of 1892, but on the contrary they assent to said
decree as being the proper construction of the will, and ask
that the sale made in pursuance of the power determined by
said decree be confirmed by the Court, and the only persons
disputing the correctness of the decree are those who were
parties to it and are bound by it. Upon the theory that they
were proper parties it was the duty of the appellees, who
brought the suit in 1892, to have made Frank K. Murphy
and Charles Abell Murphy parties thereto, and having failed
to do so they would not now be permitted to take advantage
of their own neglect and default, while the omitted parties are
assenting to and are willing to abide by what was done in that
case. To allow them to do so would enable the plaintiffs, by
omitting proper parties, to have as many constructions of a
will or other instrument as there are proper parties defendant.

But Frank K. Murphy and Charles Abell Murphy are not
the only persons who may take in remainder under the will.
The testator's daughters are given life estates, with remainders
to their children, and in the event of a daughter dying without
leaving children or descendants living at her death, her share
is given to her brothers and sisters and their descendants. As
the will does not give to the executors the power to dispose

of the ground rents in which the shares of the daughters were invested by the direction of the will, and as these unborn contingent remaindermen would not be bound by the decree of 1892, which determined that the power to dispose of the investments of the daughters' shares was vested in the executrix, their interests in the ground rents in question would not pass by a sale made by the executrix.  *Long et al.* v. *Long et al.*, 62 Md. 33;  *Ball* v. *Safe Deposit Co.*, 92 Md. 503.

The ninth paragraph of the will does not expressly give to the daughters the power to dispose of the estates in remainder in the ground rents in which their shares are invested, and by the provision that the children are not to have the "power, however, of alienation or disposition of the principal, or any power of anticipation, until they respectively reach their majority," the testator meant that after they arrived at the age of twenty-one years they should have the management of their estates, which does not include the power to dispose of the estates of the remaindermen in these ground rents.   In order to sell the estates of the remaindermen resort must be had to proper proceedings under sec. 213, Art. 16, of the Code of 1904.

The decree appealed from must therefore be reversed.

> *Decree reversed and cause remanded to the end that further proceedings may be had as to the matters reserved for future determination by the decree of the Circuit Court; one-half of the costs to be paid by each side.*