## Duncan, et al. v. Duncan, et al.

(Decided April 27, 1917.)

### Appeal from Logan Circuit Court.

1. Wills—Intention—Construction.—In the end all rules for the construction of wills are but means of ascertaining the meaning of the testator's intention, and when that is apparent from the whole will, it must be enforced.

2. Wills—Dying Without Issue—Construction.—Unless a different purpose be plainly expressed in the will, every limitation therein contingent upon a person dying without children or issue, or other words of like import, are to be construed as a limitation to take effect when such persons shall die, unless the object on which

the contingency is made to depend is then living, or, if a child of his body, such child be born within ten months next thereafter.

3. Wills—Devise to One for Life—Remainders.—Where an estate is devised to one for life, with remainder to another, but, if the remainderman should die without children or issue, then to a third person, the rule is that the words "die without children or issue" are restricted to the death of the remainderman before the termination of the particular estate. But this rule of construction is technical, and is to be applied only when there is no period to which the words "dying without children" can be reasonably referred, and in the absence of something in the will evidencing a contrary intent.

4. Wills—Defeasible Fee.—Where a testator conveyed his home place to his widow for life, with remainder to his three sons forever, but providing that no one of his said sons should ever sell his share; that in the event of the death of either of his sons leaving child or children, his interest in the land should descend and go to his child or children, each son took a defeasible fee which would be defeated by the death of the son at any time without issue then living.

COLEMAN TAYLOR for appellants.

S. R. CREWDSON for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

D. D. Duncan, of Logan county, died testate in 1910; and the only question presented by this appeal is, what character of estate did the sons, Walter, Daniel, and Thomas Duncan take in the home place of their father.

By the first clause of his will the testator directed the payment of his debts and funeral expenses, and the erection of a monument at his grave.

The second clause reads as follows:

"I give and bequeath to my beloved wife, Fannie R. Duncan, during her life, and after her death, to my three sons, namely: Walter, Daniel and Thomas Duncan, forever, to share and share alike, what I call my home place or farm, including all my household and kitchen furniture, as well as farming utensils and machinery, just as I leave them at my death.

"Said home place to be determined as follows: (Description omitted.)

"It is my desire that my three sons, Walter, Daniel and Thomas Duncan, remain upon said farm, and that they manage and control it to the best advantage, pro-

viding for their mother, Fannie R. Duncan, so long as she may live a good comfortable support. No one of said sons, are ever to sell his share in said home place, and in the event of the death of one or more of said sons, his or their share in said place, is to go and vest in those or the one remaining. I further will and desire that my son, Isaac, have a home or right to make said place his home, so long as he remains unmarried."

It will be observed that this clause provides for a survivorship between the sons, "in the event of the death of one or more of said sons," a certainty as to all of them and not a contingency as to some of them, as the testator seemed to think.

By the third clause the testator devised a tract of land to his son, Isaac; and, by the fourth clause he gave the Moore farm and the Rosefield farm on the south of the river to his sons, R. L. and S. H. Duncan, providing, however, that "should R. L. Duncan die without bodily heirs, his share in said land is to revert to my estate."

By the fifth, sixth and seventh clauses of his will the testator made provisions for other children and one grandson; but, these clauses have no bearing upon the question raised in this case.

A second codicil to the will, made July 22, 1905, further provided, in part, as follows:

"In regard to my home place in 2nd section of my will, I desire that in the event of the death of either of my sons, Walter, Daniel, or Thomas Duncan, leaving child, or children at the time of their death, that their interest in said home place descend and go to their child or children."

Fannie R. Duncan, the widow, survived her husband, and died in 1915. Daniel Duncan, the son, has two infant children, Charles Edward Duncan and Elizabeth Duncan. Neither Walter nor Thomas Duncan has any children.

In August, 1916, Walter, Daniel and Thomas Duncan filed this action against Charles Edward Duncan and Elizabeth Duncan, children of Daniel Duncan, seeking a construction of the will, and claiming the sons took a fee in remainder subject to its being defeated only by the death of one or more of them before the death of their mother, Fannie R. Duncan, the life-tenant; and, that the children of Daniel Duncan now have no interest in the home place.

A guardian *ad litem* was appointed to defend for the infant defendants.

The chancellor decided that the plaintiffs became vested with a fee simple title upon the death of their mother, and that the prohibition attempted to be imposed upon their right to sell it is void and of no effect. The infants, by their guardian *ad litem,* appeal.

The appellant's claim is that the language of the codicil makes them devisees of their grandfather, the testator, and that their father, Daniel Duncan, took but a life-estate, with remainder to the appellants or to the survivor of them at the time of his death, and that the words "child" or "children" used in the codicil are terms of purchase, and not of limitation which would be necessary in order to give their father a fee simple estate. They, therefore, insist that the contingency upon which they will take the estate is the death of their father and not the termination of their grandmother's life estate after the death of their father, a contingency which cannot now happen.

In the argument for the infants it is insisted that the testator intended to give the home place to Walter, Daniel and Thomas as joint tenants, subject to the life-estate of their mother, and that to effect that end the testator provided for survivorship among the three sons, giving to the survivor the whole estate; and, that this intent is shown by the further provision that no one of said sons is ever to sell his share in the place.

The fourth clause of the will conveying a one-half interest in the Moore farm to R. L. Duncan was construed by this court to vest R. L. Duncan with a fee simple estate. Duncan v. Duncan, 150 Ky. 824. But the fourth clause presented a case quite different from this case.

The question now before the court is: Did Walter, Daniel and Thomas Duncan take a defeasible fee, or a fee simple estate, in the home place?

It will be observed that the second clause of the will grants a life-estate to the widow, with remainder to the testator's "three sons, Walter, Daniel and Thomas Duncan *forever,* to share and share alike," but that "no one of said sons are ever to sell his share in said home place, and in the event of the death of one or more of said sons, his or their share in said place is to go and vest in those or the one remaining."

But, when the testator, in the codicil, provided that in the event of the death of either of his sons, Walter, Daniel or Thomas Duncan, leaving child or children at the time of their death, their interest in the home place should descend and go to their child or children, the codicil being the last will and testament of the testator, fixed the character of the estate of Walter, Daniel and Thomas.

So, the question recurs: Did the testator, in the codicil, mean that the date of survivorship of his sons, Walter, Daniel and Thomas, should relate to the death of Mrs. Duncan, the life-tenant, or to the death of the several sons?

Section 2344 of the Kentucky Statutes, reads as follows:

"Unless a different purpose be plainly expressed in the instrument, every limitation in deed or will contingent upon a person dying 'without heirs,' or 'without children' or 'issue,' or other words of like import, shall be construed a limitation to take effect when such person shall die, unless the object on which the contingency is made to depend is then living, or, if a child of his body, such child be born within ten months next thereafter."

All the cases recognize the rule that in the end all rules of construction are but means of ascertaining the testator's intention, and that when this is apparent from the whole will, it must be enforced.

It has often been held by this court that where an estate is devised to one for life, with remainder to another, but, if the remainderman should die without children or issue, then to a third person, the rule is that the words "die without children or issue" are restricted to the death of the remainderman before the termination of the particular estate. This is the first rule of construction formulated in Harvey v. Bell, 118 Ky. 512; and, appellees would bring this case within that rule.

But, the rule of construction is technical, and is to be applied only when there is no period to which the words "dying without children" can be reasonably referred, and in the absence of something in the will evidencing a contrary intent. If the will clearly provides that in the event of Daniel Duncan's death, at any time, leaving children, his children shall take the land, Daniel took a defeasible fee, subject to be defeated by his

death at any time without issue. Walton v. Bohannon, 150 Ky. 486. And, we are clearly of opinion that the codicil before us must be so construed.

The codicil, in plain words, fixes the descent at the time of the death of Daniel, thus making the period certain to which the words "dying without issue" are referred, and creating a defeasible fee which will be defeated by the death of Daniel at any time without issue then living. To hold otherwise would ignore the plain terms of the will.

Judgment reversed with instructions to the circuit court to enter a judgment in accord with these views.