## Dunn, Junior's Executor, et al. v. Dunn, et al.

(Decided May 3, 1921.)

### Appeal from Garrard Circuit Court.

1. Wills—Interpretation—Intention of Testator.—While there are many general rules for the interpretation of ambiguous and apparently inconsistent provisions in wills, when the intention of the testator may be reasonably ascertained from the language he has employed, all such rules must give way before such intention.

2. Wills—Estate Devised—Construction.—Where a testator devised a life estate to his wife and further provided that after her death his property should be equally divided between four named children, and with a further provision that the estate devised to three

of them in the event they should die without issue should go to the survivors of the four or their issue, and provided further that his land should be divided equally between the four after the death of his wife and held under the limitations and restraints before mentioned, such children at the death of their mother took no greater estate than they had during her life.

3    Wills—Construction—Period of Distribution.—Where a testator gives to his wife a life estate and then to his named children, but qualifies the devise to his children by a further provision that if they should die without issue the interest so devised to them should go to the survivors or to their issue, and then further provides that the division between the four should take place after the death of his wife and the devise to three of them held under the limitations and restrictions before mentioned, the period of distribution being after the expiration of the particular estate, the time at which the estate vests absolutely in his children is fixed at their death upon condition that they then have issue surviving them.

4.    Wills—Construction—Intention of Testator.—When, from the reading of a will as a whole, and giving effect to every provision therein, and considering the relations of the different provisions to each other, it may be fairly ascertained that the testator had in mind the erection of a scheme or plan by which his estate devised to certain children should not pass out of the regular blood lines, the words "dying without issue," used in the instrument in defining the estate given to his children, will be deemed to have reference to the time of the child's death; and the estate will not vest absolutely in such devisee upon issue being born to him, but he must have such issue living at the time of his death.

5.    Partition—Contingent Remaindermen.—In a partition suit between remaindermen having a defeasible fee under the terms of a will, to which contingent remaindermen are not parties, the rights of the contingent remaindermen cannot be affected either by an agreed or other judgment.

6.    Partition—Contingent Remaindermen.—In such an action the contingent remaindermen are not represented by their father.

T. L. EDELEN, R. H. TOMLINSON and L. L. WALKER for appellants.

HAMILTON & POLSGROVE for James I. Hamilton, Guardian (appellant).

FRED P. CALDWELL and J. E. ROBINSON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

On the 20th of May, 1862, Erasmus Dunn, Sr., a resident of Garrard county, executed his will, and a few months thereafter died. His will in full is as follows:

"I, Erasmus Dunn of Garrard county declare this to be my last will.

"I wish my just debts paid.

"It is my will that my wife, during her life have my land, slaves and property.

"I have heretofore given to my son James a negro, Bettie, worth $650.00, for the purpose of producing equality I will my children John, Ruth Ann, and Erasmus to be made equal with James out of my slaves.

"It is my will after the death of my wife that my land, negroes and other property be equally divided between my four children James Dunn, Ruth Ann Dunn, John Dunn and Erasmus Dunn after making the last three equal with James out of the slaves.

"The portion of my estate devised to my son John, I wish held by sons, James and Erasmus, in trust for his use and benefit during his life, and for his children, if he should marry and have any at his death.

"If my son John should die without issue the interest devised to him in my estate is to go to my children, James, Ruth Ann and Erasmus or the survivors or their issue.

"The interest in my estate devised to my daughter Ruth Ann Dunn I give to her for her sole use as her separate estate free from the control of any husband she may have.

"If she should die without issue the interest devised to her is to be divided between the three children named before or the survivors or their issue.

"If my son Erasmus should die without issue I wish the interest devised to him to go to my three children before named the survivors or their issue.

"I wish my land divided equally between my four children before named after the death of my wife and held under the limitations and restraints before mentioned.

"If my wife should marry again she is entitled to have such portions of my estate as the law gives her.

"My wife if she thinks proper may during life let any of my before named children have the use of any of the property during her life.

"It is my wish that my daughter Ruth Ann and Erasmus live with my wife Eliza and see that she is properly taken care of during her life.

"I have been at much trouble as security of my son William G. Dunn and under the circumstances I do not believe he would enjoy any part of my estate.

"I therefore give him nothing.

"I appoint my sons James and Erasmus executors of this will, this 20th day of May, 1862."

At the time the will was executed, and at the time of his death, Erasmus Dunn had a wife and five children, but he expressly provided that one of his sons should take nothing under his will.

His wife, Eliza, survived him and remained his widow until her death in July, 1889. His son, James, survived him and his mother, and at the time the will was executed, and at the death of Erasmus Dunn, Sr., and at the death of the widow, Eliza, in 1889, had three children, who are the appellees herein. Ruth Ann survived her father and survived her mother, Eliza, but died subsequent to 1889 without living issue. The son, John, likewise survived his father and his mother and died subsequent to 1889 without living issue.

Erasmus Dunn, Jr., married during the lifetime of his mother in about 1885, and there were born to him in 1886, during the lifetime of his mother, two children, who were twins, and they each lived until 1890, when they each died, after the death of their grandmother. The wife of Erasmus Dunn, Jr., died some years thereafter, and he himself died in 1919, leaving no issue surviving him, and leaving as his only near relatives the surviving children of his deceased brother, James, who are now the appellees herein.

Erasmus Dunn, Jr., however, left a will wherein he undertook to devise the land taken under his father's will to Annie E. Watkins and her children. Annie E. Watkins died before the will of said Erasmus Dunn, Jr., was probated, and the appellants are the executor of said Erasmus Dunn, Jr., and the children of Annie E. Watkins, the devisees under the will of Erasmus Dunn, Jr.

After the death of Eliza Dunn, the widow of Erasmus Dunn, Sr., there was instituted in the Garrard circuit court an action for the settlement of the estate of Erasmus Dunn, Sr., it appearing that some of his debts still remained unpaid at that time, and in that action it was likewise sought to partition his landed estate among his four children named as devisees. To that action

only his four children so designated as devisees were parties, and neither the children of James Dunn then living nor the twin children of Erasmus Dunn, Jr., then living were made parties. Pending this action, however, and in 1890, the two twin children of Erasmus Dunn, Jr., died. It was made to appear in that action that there still remained unpaid of the debts of Erasmus Dunn, Sr., something over $5,900.00, and by agreement among his said four children, who were his devisees, they each assumed and agreed as among themselves to pay one-fourth of that amount, and there was thereupon entered an agreed judgment in that action, and the court having appointed commissioners had the lands partitioned among the four children, and there was under the orders of court conveyed to each of them respectively the lands so set apart to them, and the master commissioner attempted to convey in fee simple to Erasmus Dunn, Jr., the lands now in controversy.

This is an equitable action by the children of James Dunn, son of Erasmus Dunn, Sr., against the executor and devisees of Erasmus Dunn, Jr., wherein the plaintiffs assert title under the terms of the will of Erasmus Dunn, Sr., to the lands so partitioned to Erasmus Dunn, Jr.

The defendants answered claiming, in substance, that under the will of Erasmus Dunn, Sr., Erasmus Dunn, Jr., took the fee at his mother's death, and having had living issue during the existence of Eliza Dunn's life estate, took the fee, and further, that having had such issue living at the time of the death of his mother, Eliza, he took the fee, and that the fact that his said two children subsequently died before he did, did not divest him of that fee; in other words, that under the correct interpretation of the will of Erasmus Dunn, Sr., upon the birth of living issue during the existence of the particular estate, Erasmus Dunn, Jr., under the terms of his father's will, became vested with the fee.

The questions presented for decision are:

(1) Did Erasmus Dunn, Jr., take the fee under his father's will upon his mother's death or at the birth of issue to him during the existence of the particular estate, or did the children of James Dunn, his brother, take under the terms of the will of Erasmus Dunn, Sr., the fee upon the death of Erasmus Dunn, Jr., without living issue surviving him?

(2)   Did the agreed judgment in the action instituted after the death of Eliza Dunn by the four devisees have the effect of vesting the fee in Erasmus Dunn, Jr., although the children of his brother, James Dunn, were not parties to that action?

(1)   The first contention of appellants is that Erasmus Dunn, Jr., took under the terms of his father's will an absolute estate upon the death of his mother.

To so hold would be to nullify or entirely ignore not only two express provisions of the will but would be to give no effect whatever to the general scheme of the testator as appears throughout the whole instrument.

In the early part of the instrument and immediately after giving to his wife a life estate, the testator expressly provides that it is his will that "after the death of my wife my land, negroes and other property be equally divided between my four children;" and then again in a later clause, after having placed certain limitations and restraints upon the estate devised to John, Ruth Ann and Erasmus, he again provided, "I wish my land divided equally between my four children before named after the death of my wife and held under the limitations and restraints before mentioned."

To say in the face of these two provisions that the testator intended his said three children, or any one of them, to have an absolute estate at the death of his wife, would, as we have said, not only destroy the whole scheme which the testator manifestly had in his mind of keeping the property within the blood lines, but would ignore the essential fact that he fixed the period of distribution after the death of his wife and expressly provided that the limitations and restrictions fixed on the estates devised should thereafter remain in effect.

It is clear that if he had intended his said three children to take an absolute fee in remainder upon the death of their mother, he would not have placed the limitations and restrictions upon the estate devised to them so that the same should be operative after her death.

There are many general rules adopted by the courts in interpreting ambiguous and apparently inconsistent provisions in wills; but there is one of universal application and to which all others must give way, and that is when the intention of the testator may be reasonably ascertained from the language he has employed, that intention must prevail.

From the language employed in the instrument involved, it is not to be doubted that the testator intended the limitations and restraints placed upon the interests devised to his said three children to be operative after the death of his wife, and it therefore necessarily follows that at her death they took no greater interest than they had before. Not only so, if the testator had so intended, there would have been no necessity whatever for the use of the words in the later clause of his will providing that after the death of his wife the estates devised to the three children should be held under the limitations and restraints before mentioned.

It is the further contention of appellants that upon the birth of issue to Erasmus Dunn, Jr., under the provisions of his father's will he became vested with the absolute fee.

The provisions of the will are inconsistent with such an interpretation; it plainly provides, as we have seen, that the period of distribution shall be after the death of the wife, after the expiration of the particular estate, and the provision that it shall thereafter be held under the limitations and restrictions prescribed is inconsistent and utterly repugnant to the idea that it might in any event have vested during the lifetime of Eliza Dunn. The limitations and restrictions having been made expressly effectual after the expiration of the life estate of Eliza Dunn, the "dying without issue" could not have had reference to any other time except the death of Erasmus, Jr. If the testator had in his mind that the limitations and restrictions which he imposed might have been removed by the birth of issue during the lifetime of his wife, he would not have inconsistently imposed those same limitations and restrictions upon the estate devised and provided they should continue after her death.

Even a casual reading of the instrument involved is convincing that the testator was deliberately hedging about the devise to his said three children with such limitations and restrictions as would effectually prevent his property from going outside the blood lines.

It is true the law in doubtful cases and in the interpretation of ambiguous and uncertain instruments favors the vesting of estates, but it is likewise true that the courts are not authorized to nullify the wishes of decedents or to so interpret their wills as to defeat their manifest purposes,

It is our conclusion that the testator plainly intend-
ed that his said three children should take a defeasible
fee in the estate devised to them, subject to be defeated
upon their death without issue surviving them, and that
his grandchildren—the children of his four named de-
visees—should take a contingent remainder in the in-
terest devised to each of the three, to vest in the con-
tingent remaindermen only upon the death of any one of
the three without issue surviving them. Harvey v. Bell,
118 Ky. 512; Duncan v. Duncan, 175 Ky. 253; Dockery's
Exors. v. Dockery, 170 Ky. 194; Buschemeyer v. Klein,
139 Ky. 124.

(2)  The remaining question is whether Erasmus
Dunn, Jr., took an absolute fee under the commissioner's
deed executed under the orders of the court in the action
instituted after the death of his mother.

In the first place there was no interpretation of the
will of Erasmus Dunn, Sr., sought in that action, nor
was there any judgment of the court attempting to con-
strue it.  As the action finally terminated it was only for
partition among the four children as provided for in
their father's will.  They each assumed to pay one-
fourth of his remaining indebtedness and they were each,
under the judgment of the court and the report of the
commissioners, set apart one-fourth of his landed estate.

Under the express provisions of section 396 of the
Civil Code a conveyance by a commissioner pursuant to
a judgment passes only the title of the parties to the ac-
tion so ordered to be conveyed. These appellees, whom
we have seen had a contingent remainder in the land de-
vised to Erasmus Dunn, Jr., were not parties to that
action and there was no effort by the commissioner or
by any judgment or order of the court to divest them
of any right or title they had, and if there had been such
effort, they not being parties, it would have been without
avail.

The claim that they were represented in that action
by their father and that he represented the same interest
that they did, cannot be maintained; their father's in-
terest under the will in the devise to Erasmus Dunn, Jr.,
was conditioned upon the death of Erasmus Dunn, Jr.,
without issue surviving him during the lifetime of said
James Dunn, while the contingency upon which his chil-
dren took an interest under the devise to Erasmus Dunn,
Jr., was made to depend upon the death of Erasmus

Dunn, Jr., after the death of their father, and without issue surviving him (Erasmus, Jr.).

It is apparent that these appellees were in no sense bound by any judgment in that case; in fact there was no judgment determining or undertaking to determine their interest.

The judgment of the chancellor below conforms to these views, and it is affirmed.