Anna Mennig, Appellant, v. D. P. Graves et al., Appellees.

No. 40442.

January 13, 1931.

*Nourse & Nourse,* for appellant.

*Stipp, Perry, Bannister & Starzinger* and *Donald Holdoegel,* for appellees.

Albert, J.—C. W. Mennig, the husband of the plaintiff, died testate August 28, 1916, the owner of the property in controversy herein. He left surviving him the plaintiff and a daughter, Helen Mennig, who subsequently intermarried with Charles S. Howard on October 27, 1921. No children have been born to this marriage, and the said Helen is now 37 years of age.

The said will of C. W. Mennig was duly admitted to probate on the 2d day of October, 1916. After the will orders his just debts and last sickness and funeral expenses to be paid, the second, third, and fourth paragraphs cover special bequests. The fifth paragraph reads as follows:

"All the rest and residue of my estate of every kind and character, real, personal and mixed and wheresoever situated, of which I may die seized or possessed or that may become due my estate, I give, devise and bequeath one half thereof absolutely

and in fee simple to my beloved wife, Anna Mennig; and the remaining one half thereof I give, devise, and bequeath to my beloved daughter Helen Mennig, upon the conditions and with the qualifications that said Helen Mennig shall have the entire net income therefrom as long as she and my wife Anna Mennig both live, but if said Helen Mennig should die before said Anna Mennig, leaving no children of her body surviving her, then said half interest shall become the property absolutely, and in fee simple of said Anna Mennig but if said Helen Mennig should die before said Anna Mennig leaving a child or children of her body surviving her, then said half interest shall become the property absolutely and in fee simple of said surviving child or children of said Helen Mennig; but if the said Anna Mennig, should die before said Helen Mennig, then said half interest shall upon the death of said Anna Mennig become the property absolutely and in fee simple of said Helen Mennig.''

All debts and charges against said estate and all legacies, costs, and expenses of administration were paid from the personal property of said estate.

In 1925, an action in partition was brought by Anna Mennig against Helen Mennig Howard and her husband, Charles S. Howard, in which the plaintiff alleged, among other things, after setting out the history of this property, the death of C. W. Mennig and the probating of his will; that there is a question as to whether or not Helen Mennig Howard has a right to convey the fee-simple title to the undivided half interest in said property so devised to her, and for the purpose of removing such doubt, it was necessary that this action be brought in equity to partition said real estate and set at rest any question in regard to the title thereto; and after alleging certain other matters not now material, the prayer is that ''it be decreed by this court * * * that any and all doubtful or contingent interests, if any exists in or upon said real estate, be divested therefrom, and that an absolute and perfect title in fee simple be conveyed to the purchaser or purchasers thereof;'' that one referee be appointed to make said sale; and that one half of the proceeds thereof, representing the share of Helen Mennig Howard, be placed in trust.

To this Helen Mennig Howard and her husband filed answer as follows:

''These defendants admit each and every allegation con-

tained in said petition, and pray that their rights and interests under the provisions of said will be fully protected.''

On the 9th day of November, 1925, a decree was entered therein, in accordance with the prayer of the petition, authorizing the referee to sell the same, subject to the approval of the court, and that ''the sale thereunder and approval by this court shall pass to the purchaser or purchasers thereof the absolute title in fee simple of said real estate, free and clear of all liens and encumbrances and divested from any and all unknown, apparent, contingent, or doubtful interests if any, whatsoever; that all of said apparent unknown, contingent, and doubtful interests, if any, shall pass and attach to the one half of the proceeds of said sale;'' that one half of the proceeds of said sale shall be paid to Anna Mennig, and the other half placed in the hands of a trustee, said trust to exist until the character of the estate of Helen Mennig Howard in and to the one-half interest of said real property is determined, the income of said trust to be paid to Helen Mennig Howard so long as it is provided in and subject to the above provision of the will of C. W. Mennig, deceased, and until further order of the court.

Under this sale so ordered, Anna Mennig became the purchaser of said property, and a deed was duly made to her, according to the terms of the decree. On November 7, 1928, she entered into a contract to sell to the defendant Graves a part of the property described in said partition decree, to wit, the west 75 feet of Lot 8 and the east 25 feet of Lot 9 of Mennig Place Plat 2, being an official plat of Lots 25, 26, and 27, Mennig Place, in Des Moines, Iowa. Under the terms of this contract, $500 was paid down, and deferred payments were provided for, with interest.

On August 6, 1929, the petition in equity in the case at bar was filed, for the purpose of foreclosing said land contract, bottomed on the ground, among others, that the purchaser had failed to pay the taxes and interest, as provided in said contract, and because of said failure, plaintiffs served notice, and asked judgment for the balance due on the contract, and that the same be foreclosed. The answer sets out, among other things, that plaintiff was not, and still and now is not, the owner and holder of a good, merchantable, and perfect fee-simple title to the premises described, in that, under the terms of the will of C. W. Men-

nig, heretofore set out, any child or children born to Helen Mennig Howard now or may hereafter become entitled to an undivided one-half interest in fee in said property, and such child or children, if any be born, would take title to an undivided one-half interest in said property senior and paramount to an alleged and pretended title held or claimed by the plaintiff in this suit. They offer to relinquish and convey to the plaintiff all the right, title, and interest acquired by defendants under the land contract, to restore the possession, and place the plaintiff *in statu quo*; allege that they have and hereby rescind said contract, and demand that plaintiff return the sum already paid by them to plaintiff under said contract. They offer to do equity, and ask that they have judgment against plaintiff for $500, with interest, and that said contract be canceled and held for naught.

No one disputes that Anna Mennig, under the terms of this will, received a fee-simple title to an undivided one-half interest in the property given by the will. The case is narrowed down to the sole question of whether or not, by reason of the partition sale, she got a fee-simple title to all of the property described in the land contract.

Under this will, Helen's half of this estate was devised to her upon the condition and with the qualification that she should have the entire net income so long as she and her mother Anna both lived. Second, if Helen died before Anna, leaving no child or children of her body surviving her, this property would become the property of Anna "absolutely and in fee simple." Third, if Helen died before her mother, Anna, leaving a child or children of her body surviving her, this property would become the property of such child or children of Helen "absolutely and in fee simple." Fourth, if Anna died before Helen, then this half would become the property of Helen in fee simple.

It will be noted that here are three possible contingent remainders: to Anna, to Helen, and to the unborn child or children of Helen. With reference to the remainder in the mother and in the daughter, we are not concerned; but the crux of the case lies around the remainder to the "unborn child or children of Helen." Both parties treat this interest of the unborn child or children of Helen as a contingent remainder, and we will also so treat it.

At the time of the partition case and ever since, Helen had

no child or children, and the real question is whether or not the contingent remainder in favor of the unborn child or children of Helen was cut off by the partition case. This calls for a consideration of the question of what is designated by some authorities as ''equitable representation,'' and by others as ''virtual representation:'' that is to say, certain parties to the litigation may represent the unborn, and thus bind the unborn heir. We had occasion to discuss this question quite elaborately, and recognized this rule in *Buchan v. German American Land Co.*, 180 Iowa 911. We there recognized and adopted this rule, and applied it in that case. The thought underlying this doctrine and the doctrine in the *Buchan* case is that, where there is a contingent remainder, and some of the contingent remaindermen are in existence, a decree in a proceeding in which they are parties is binding not only upon the persons *in esse*, but upon all those of the same class who may afterwards come into being. In other words, if, at the time of this partition proceeding, Helen Mennig Howard had one child, and that child were made a party defendant to the partition case, under the theory of equitable representation, the decree against that child would be binding upon all children subsequently born to Helen Mennig Howard. In the case at bar, however, no child or children who would be remaindermen under this clause of the will were made party defendants in the partition case, and we are asked in this case to go one step further, and hold that the fact that the person or persons holding the particular estate which preceded the contingent remainder is such a person as that, having been made a party defendant in the particular case, such person would, under the doctrine of equitable representation, represent the unborn remaindermen, thus binding them. We do not feel disposed to extend this doctrine, under these circumstances.

The general rule in equity is that parties not before the court are not bound by the decree. The doctrine of equitable representation is the exception to this rule. It is built upon the theory that the contingent remaindermen are represented by others who have a similar interest, and that their interest will receive thereby actual and efficient protection; and, to be effective, their representation must be such that it would be certain that they would bring forth the merits of their rights

and use reasonable efforts to protect their interest. *Weberpals v. Jenny,* 300 Ill. 145 (133 N. E. 62).

Another qualification that applies is that his representative must have acted in good faith, and have done all that was reasonable and necessary to protect his interest. If we stop for a moment to apply this theory to the situation before us, no one disputes that the unborn child or children of Helen have a contingent remainder in this property. If we are to accept the appellant's contention that the fact is that she was a holder of a life estate in this property preceding the contingent remainder, and that she could represent and bind the contingent remaindermen, the case would not yet be within the rule as explained, because she is not protecting and defending the interest of the unborn child, but is assaulting and trying to destroy it. Neither can Helen be held to represent the unborn child, because the answer filed by her in the partition case was an admission of everything claimed by the plaintiff, and necessarily resulted in a holding cutting off the contingent remainder of the unborn child or children of Helen in the property. In fact, the interest of both Helen and Anna was adverse to that of the unborn child or children. More than this, Helen was the owner of the life estate, and the unborn children were contingent remaindermen. She was not in the same class with the unborn children.

Appellant relies on quotations from Freeman on Co-tenancy and Partition (2d Ed.) 640, Section 482, Story's Equity (14th Ed.) 153, and Story's Equity Pleadings (9th Ed.), Section 145. These authorities refer back to an English case in an opinion by Lord Redesdale, where the doctrine was laid down that it was sufficient to bring before the court the first tenant in tail in being; and if there be no tenant in tail in being, the first person in being is entitled to the inheritance; and if no such person, then the tenant for life. This line of cases is distinguishable in that tenants in tail take through their predecessor, and not by devise from an ancestor, and by certain process the tenant in tail might defeat the succeeding estate by docking the entail; and therefore, there was no impropriety in holding that the tenant in tail might represent the unborn remaindermen. We do not find this line of authority applicable to the present case. As tending to support this conclusion, see *Brett v. Yeaton,*

101 Ill. 242; *Downin v. Sprecher*, 35 Md. 474; *Chaffin v. Hull*, 49 Fed. 524.

We conclude, therefore, that the unborn child or children of Helen were not bound by the decree in the partition case; hence the plaintiff herein did not have a merchantable title, and defendant was warranted in the action he took in refusing to proceed further under the contract. His tender to establish the *status quo* of the plaintiff should have been granted, and the purchase-money payments should have been returned to him by the plaintiff. As sustaining these conclusions, see *Yancey, Ex parte*, 124 N. C. 151 (32 S. E. 491); *Thompson v. Humphrey*, 179 N. C. 44 (101 S. E. 738); *Downey v. Seib*, 185 N. Y. 427 (78 N. E. 66); *Smith v. Secor*, 157 N. Y. 402 (52 N. E. 179); *Murphy v. Coale*, 107 Md. 198 (68 Atl. 615); *Dunn v. Dunn*, 191 Ky. 817 (232 S. W. 40); *Goodloe v. Woods*, 115 Va. 540 (80 S. E. 108); Freeman on Judgments (5th Ed.) 1054-1056.

There are some cases that hold that, where the estate is menaced and the property is liable to be lost and the rights of all parties interested destroyed, the necessity of the situation warrants the equity court in ordering a sale and the proceeds impounded as a substitute for the real estate; but if we were to establish this rule in this state, it would not aid the appellant, because the fact situation as proven would not warrant the application of such a rule. We conclude that the decision of the district court was right.—*Affirmed*.

FAVILLE, C. J., and STEVENS, DE GRAFF, MORLING, KINDIG, WAGNER, and GRIMM, JJ., concur.