(No. 14090.—Decree affirmed.)
JOHN WEBERPALS, Appellant, *vs.* EMIL JENNY, Appellee.

*Opinion filed October 22, 1921—Rehearing denied Dec. 14, 1921.*

1. SPECIFIC PERFORMANCE—*vendor seeking to enforce contract for conveyance must prove he has a good title.* A vendor who files a bill for specific performance of a contract for a conveyance must show that the title which he offers to convey is not a doubtful title or one which will expose the vendee to litigation with parties not before the court and not bound by its decree, and where there is a reasonable doubt as to the validity of the title the court will not enforce the contract.

2. WILLS—*effect of devise to life tenant with remainder to her living children or their descendants.* By a devise to a life tenant with remainder in fee to her children living at her death, and with a provision that the children of any deceased child of the life tenant shall take the parent's share, the children of the life tenant living at the time of the testator's death will take the fee subject to the life estate and subject to having their interest diminished by the birth of another child or children to the life tenant, and upon the death of any such remainder-man leaving a child or children who survive the life tenant, such child or children will take the remainder-man's share by way of executory devise, and the interest so taken is not subject to any charges created by the remainder-man in his lifetime.

300—10

3. SAME—*decree construing will, although erroneous, is binding on the parties unless reversed or annulled in direct proceeding.* If the court has jurisdiction, a decree construing a will is binding on the parties and on every other court unless it is reversed or annulled in a direct proceeding, no matter how grossly irregular and manifestly erroneous the proceedings may have been, and the owner of the property involved is protected against any subsequent litigation concerning the title by anyone who was a party to the suit or would be bound by the decree under the doctrine of representation.

4. SAME—*statement of the doctrine of representation.* The general rule that in proceedings in equity the interests of parties not before the court will not be bound by the decree is subject to the exception known as the doctrine of representation, and where it appears that a particular party, though not before the court in person, is so far represented by others that his interests receive actual and efficient protection, the decree may be held binding on him.

5. SAME—*what is necessary to application of doctrine of representation.* To apply the doctrine of representation the party represented must stand in the same situation as parties before the court, and it must appear that he has a common right or interest with them, the operation and protection of which will be for the common benefit of all and cannot be to the injury of any, and said parties present must be equally certain to bring forward the entire merits of any question with reference to the interests claimed to be represented.

6. SAME—*when interests of parties not in esse are represented.* As parties not *in esse* cannot be brought before the court in person the doctrine of representation is especially applicable to them, particularly where the interests of all parties require a decree which will completely and finally dispose of the subject matter of the litigation; and if persons in being are before the court who have the same interests and are equally certain to bring forward the merits of the interests of parties not *in esse,* so as to give such interests effective protection, justice requires that there should be a complete decree.

7. SAME—*when doctrine of representation does not apply.* A decree construing a devise of a life estate with remainder in fee to the children of the life tenant living at her death, or to the children of any deceased child of the life tenant, is not binding on the children who may yet be born to the life tenant, where the pleadings in such suit show that the living children of the life tenant claimed the fee and denied that children who might yet be born to her had any interest, as the doctrine of representation can not be applied where a part of a class seek to destroy the interests of another part of the same class who are not made parties to the suit.

8. SAME—*both bill and decree should designate interests of parties not in esse.* Where tenants in common and life tenants seek by proceedings in equity to have defined and set off their interests in lands in which persons not *in esse* may have some interest the bill should clearly set out. the interests of all the parties, including those of remainder-men not *in esse,* and the decree must designate the interests of such remainder-men before they will be bound thereby.

9. SAME—*the possibility of issue is not extinct until death.* As nature has fixed no certain age, by years, at which child-bearing capacity shall begin or end, the law recognizes the possibility of issue in all adult women until death.

10. SAME—*when grandchildren of life tenant, both those in being and those not in esse, are represented by guardian ad litem.* In a proceeding to construe a devise of a life estate with remainder to the children of the life tenant who survive her or to the children of any deceased child, where the bill sets forth the interests of the grandchildren of the life tenant and makes the living grandchildren parties to the suit, a guardian *ad litem* appointed to represent the minor grandchildren will by the doctrine of representation represent any grandchildren yet to be born, and their interests will be bound by the decree, notwithstanding the general rule that the interests of parties not before the court will not be bound.

11. SAME—*when heirs of testator are not necessary parties to suit to construe devise.* The heirs of the testator are not necessary parties to a suit to construe a devise of a life estate with a remainder in fee to a class of persons who take a vested interest at the testator's death even though there be an executory devise over to the child or children of any remainder-man who dies before the life tenant, as in such case the fee will pass to his children by the executory devise, while if he leaves no child or children his interest descends, in any event, to his heirs and not to the heirs of the testator.

12. PARTIES—*section 7 of the Chancery act applies only to "unknown heirs or devisees" in being.* Section 7 of the Chancery act, providing that in suits to obtain title to lands, if there be persons interested whose names are unknown, it shall be lawful to make such persons parties by the name and description of "unknown owners" or "unknown heirs or devisees" of any deceased person, applies only to persons in being and does not refer to persons who may never be born.

APPEAL from the Circuit Court of Kane county; the Hon. ADAM C. CLIFFE, Judge, presiding.

LYNDEN EVANS, and HUGH J. MAIR, for appellant.

JOHN M. RAYMOND, and JOHN K. NEWHALL, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

June 27, 1919, John Weberpals, appellant, agreed to convey March 1, 1920, by warranty deed, a 200-acre farm in Kane county to Emil Jenny, appellee, for $44,000, $2000 of which was paid in cash, and to furnish an abstract of title thereto showing a merchantable title. Appellant furnished an abstract of title as agreed, but appellee refused to accept a deed to the farm and pay the balance of the purchase price on the ground that the title shown by the abstract was not merchantable. April 5, 1920, appellant filed his bill in the circuit court of Kane county to compel the specific performance of the contract by appellee. Appellee answered the bill denying that the title shown by the abstract was merchantable, and filed his cross-bill asking that appellant be substituted in his stead in a certain lease entered into between appellee and George Pester, and for other relief. Appellant answered the cross-bill and replications were filed. The cause was heard before the chancellor, who dismissed the original bill for want of equity and granted the prayer of the cross-bill. This appeal followed.

This being a bill by the vendor for the specific performance of a contract for the sale and conveyance of land, to entitle himself to a decree he must show that the title which he offers to convey is not a doubtful title and is not one which will expose the vendee to litigation with parties not now before the court and therefore not bound by its decision. Where there is a reasonable doubt as to the validity of the title the court will not specifically enforce a contract of this character. There is a full discussion of this subject in *Close* v. *Stuyvesant,* 132 Ill. 607, and ref-

erence is made to the opinion filed in that case for fuller exposition of the rule. See, also, *Street* v. *French,* 147 Ill. 342, and *Smith* v. *Hunter,* 241 id. 514.

Whether appellant owns the land covered by this contract in fee simple depends upon the construction to be given clause 6 of the will of David Sholes, deceased, and the effect thereon of three decrees entered in the circuit court of Kane county. Sholes died testate September 25, 1881, leaving his widow, Mary J. Sholes, two sons, David W. Sholes and Ernest C. Sholes, and a daughter, Esther C. Smith. The sixth clause of his will reads as follows:

"*Sixth*—I give and devsie unto my daughter, Esther Smith, the wife of William Smith, subject also to such life estate of my said wife in one-third thereof, all the following real estate: [Here follows a long legal description of 419 acres, including the 200 acres in controversy herein.] My said daughter, Esther Smith, to have and to hold the same free from all control or interference of her said husband for and during the full term of her married life, and at her death I give and devise the reversion and fee of said lands to the children of the said Esther Smith, to be divided between them equally and to be theirs absolutely, subject also to the interest of my said wife therein, if she be living; and if at that time any of such children shall have died leaving any child or children living at the time of the death of my said daughter, then I direct the share of such deceased child shall descend to such living child or children equally."

By this will the four children of Esther C. Smith living at the time of testator's death became the owners in fee of the real estate devised, subject to the life estates of their mother and grandmother and subject to having their interest divested by the death of one or more of them leaving a child or children or diminished by the birth of another child or other children to Esther C. Smith. (*Cheney* v. *Teese,* 108 Ill. 473; *Field* v. *Peeples,* 180 id. 376.) If the

remainder-men, or any one of them, die before the life tenant, leaving a child or children living at the time of the death of the life tenant, then such child or children would take the remainder-man's share by way of executory devise, and the interest so taken is not subject to any charges created by the remainder-man in his lifetime. (*Lachenmyer* v. *Gehlbach,* 266 Ill. 11; *McBride* v. *Clemons,* 294 id. 251; *Warrington* v. *Chester,* 294 id. 524.) The reasons for these conclusions are fully set out in the cases cited and it is unnecessary to repeat the discussion here.

In 1888 the widow, Mary J. Sholes, filed her bill in the circuit court of Kane county asking that her life interest in one-third of the land devised by clause 6 of the will of David Sholes, deceased, be set off to her. So far as this record shows the bill did not attempt to set out the interests of the remainder-men and executory devisees and did not ask that the will be construed. She made Esther C. Smith, her husband, William Smith, and the four minor children of Esther C. Smith, viz., Alice J. Smith, John D. Smith, Stephen S. Smith and Lydia E. Smith, defendants. The minors were represented by a guardian *ad litem.* Among the recitals in the decree entered in that cause was the following finding: "That by force of the premises and the will aforesaid the complainant now has a life estate in one equal undivided one-third part of said 419 acres, and that said Esther Smith has a life estate in all of said land subject to the life estate of the complainant in the one-third part thereof, and that in [the] fee and reversion of said land is now vested in said infant children of said Esther, subject to said life estate and liable to be divested or changed by their or any of their subsequent deaths or by the birth of another child or other children of said Esther, and that, aside from the parties hereto, there is now no person or persons who have any right, title or interest in and to said lands or any part thereof, in fee, reversion or otherwise." The ordering part of the decree made no

reference to this recital. It directed that certain lands not now in question be set off to Mary J. Sholes and did not direct the disposition to be made of the interests of the remainder-men. Mary J. Sholes died in 1889 and her interest was thereby terminated. There being no order or direction in this decree affecting the interests of the remainder-men or of the executory devisees, it has no effect upon the title here involved and need not be further considered.

In 1908 John D. Smith and his wife executed and delivered to Fred S. Smith (formerly Stephen S. Smith) a quit-claim deed conveying his interest in the premises in question. In 1910 Fred S. Smith filed in the circuit court of Kane county a bill to quiet title, and made defendants thereto, Esther Smith and her husband, William Smith, Lydia E. Oakley, (*nee* Smith,) John D. Smith, Alice J. Carlisle, (*nee* Smith,) Bonnie Oakley, daughter of Lydia E. Oakley, Esther Smith and Elizabeth Smith, daughters of John D. Smith, Marjorie Carlisle, daughter of Alice J. Carlisle, Lois Smith, Florence Smith and Leo Smith, children of Fred S. Smith, unknown heirs, devisees, legatees and assigns, and any and all unknown owners or parties in interest in and to said property, and certain other parties not necessary to be named here. A guardian *ad litem* was appointed to represent the minor grandchildren of Esther Smith. The bill averred the death of David Sholes and the above mentioned proceeding in partition and set forth clause 6 of the will of David Sholes and averred the death of Mary J. Sholes. It then alleged that the will of David Sholes was ambiguous and needed construction; that it had been asserted that the remainder of said premises after the life use was suspended pending the death of Esther Smith, and that upon the death of any of the children of Esther Smith prior to her death the share of the parent would then be vested in the children of such deceased parent, and that by reason of such claim a cloud was created upon the title to the lands. August 28, 1912, a decree was

entered, which found, among other things, "that by and under the sixth clause of the last will and testament of said David Sholes, deceased, it was his wish and intention to give and devise a life estate to his daughter, Esther Smith, subject, however, to a life estate to his wife, Mary J. Sholes, now deceased, and the vested remainder to all the children of said Esther Smith who might be living at the time of the death of his said wife, Mary J. Sholes, and being Lydia E. Oakley, John D. Smith, Alice J. Carlisle and Fred S. Smith, and the court hereby construes the phraseology and wording of said sixth clause of said will to read and be regarded as last above set forth." In the ordering part of the decree it is declared, among other things, "that the title to such property be decreed to be as good, perfect and indefeasible, both at law and in equity, as it would have been if said clouds and defects had never existed and been made, and that such parties above named be decreed to have a fee simple title in and to such premises free and clear of all defects of each and every kind or nature, and the same is so ordered and decreed."

In 1913 Fred S. Smith and wife conveyed by warranty deed the premises to Lydia E. Oakley and Alice J. Carlisle. In 1914 Esther C. Smith and her husband, William M. Smith, Alice J. Carlisle and her husband, Harry N. Carlisle, Stephen S. (Fred S.) Smith and his wife, Mamie Smith, and Lydia E. Oakley and her husband, C. B. Oakley, filed their bill in the circuit court of Kane county to establish and confirm the title of Lydia E. Oakley and Alice J. Carlisle in said real estate in fee simple. They made as defendants thereto Mary Marjorie Carlisle, Esther M. Smith, Lydia Elizabeth Smith, Lois Smith, Florence Smith, Leo Smith and Bonnie Oakley, all grandchildren of Esther C. Smith, and also the unknown owners and unknown devisees of David Sholes, deceased, and other parties not here material. A guardian *ad litem* was appointed for all the minor defendants and the usual answer filed.

March 2, 1915, a decree was entered, finding, among other things, "that Lydia E. Oakley and Alice J. Carlisle were at the time of filing this bill herein, and are now, the owners in fee simple, subject to the life estate of their mother, Esther C. Smith, and are in possession of the following described premises,"—describing the premises in question. The court then found that they had title by *mesne* conveyances from the United States of America, and recited that David Sholes died testate, and that a partition proceeding was had setting off certain lands to his widow under clause 6 of his will, and set forth the findings of the 1888 decree, which defined the interests of the parties then living. The decree then proceeded: "The court further finds that Esther C. Smith is now about sixty-nine years of age and wholly incapable of bearing children,—that is, to her the possibility of issue is wholly extinct and that it is impossible for said Esther C. Smith to have any other or further children born to her." It then recited the proceedings had in 1910 and 1912 to quiet the title and found that all persons defendant in that suit were bound by that decree. The court further found that all the devisees of David Sholes, including those still unborn, are bound by said proceedings and have no right, title or interest in said lands, and that any children who might hereafter be born to Esther C. Smith are of the same class and stand in the same relation as the living children of Esther Smith who were made defendants. The court further found that all the children or grandchildren who may be born are unknown and that their names are unknown, and that they are made parties defendant by the name and description of "unknown devisees of David Sholes, deceased." The decree then concluded: "It is further ordered, adjudged and decreed that the complainants, Lydia E. Oakley and Alice J. Carlisle, are the sole owners in fee simple of said tract E, [being the lands in question,] subject to a life estate therein in their mother, Esther Smith, and that all other com-

plainants and all the defendants, and those claiming by, through or under them, except those three last above mentioned, have no right, title or interest in and to said tract E, or any part thereof, and that the title of said Lydia E. Oakley and Alice J. Carlisle, subject to a life estate of said Esther Smith in said tract E, is hereby confirmed and quieted; that all the defendants and all the other complainants, and those claiming by, through or under them, are forever barred and enjoined from all right, title and interest in and to said tract E and every part thereof; that said Lydia E. Oakley and Alice J. Carlisle, and their successive grantors, have been in open, notorious and undisputed possession of said premises for thirty years and have paid all taxes thereon."

There is no claim that the court did not have jurisdiction of the subject matter involved in these proceedings and that it did not have jurisdiction of all the parties named as defendants. Granting that the court had jurisdiction, it is altogether immaterial, when the decree is collaterally called in question, how grossly irregular and manifestly erroneous the proceedings may have been. The decree can not be regarded as a nullity and cannot therefore be collaterally impeached. Such a decree is binding on the parties and on every other court unless reversed or annulled in a direct proceeding. (*Miller* v. *Rowan,* 251 Ill. 344.) No appeal was taken from either of these decrees and therefore the suits are both at an end. The owner of the land in question would therefore be protected against any subsequent litigation concerning the title by anyone who was a party to the suit or who would be bound by the decree under the doctrine of representation. *Hopkins* v. *Patton,* 257 Ill. 346; *Kuzak* v. *Anderson,* 267 id. 609.

We come, therefore, to the question whether the after-born children or grandchildren of Esther C. Smith are bound by these decrees under the doctrine of representation. It is unquestionably a general rule that in proceedings in

equity the interests of parties not before the court will not be bound by the decree. This rule is subject, however, to certain well recognized exceptions, among which is one growing out of convenience or necessity in the administration of justice, which has given rise to what is known as the doctrine of representation. Where it appears that a particular party, though not before the court in person, is so far represented by others that his interests receive actual and efficient protection, the decree may be held to be binding upon him. It must appear that he stands in the same situation as parties before the court and that he has a common right or interest with them, the operation and protection of which will be for the common benefit of all and cannot be to the injury of any. In order to apply the doctrine there must be some persons present who, with reference to the interests in question, are equally certain to bring forward the entire merits of the question, for the reason that the object is satisfied for which the presence of the actual owner would be required. This doctrine is especially applicable where persons not before the court are only possible parties not *in esse,* and where the interests of all parties *in esse* require a decree which will completely and finally dispose of the subject matter of the litigation. Such possible parties cannot, as a matter of course, be brought before the court in person, and it would be highly inconvenient and unjust that the rights of all parties in being should be required to await the possible birth of new claimants until the possibility of such birth has become extinct. If persons in being are before the court who have the same interests and are equally certain to bring forward the entire merits of the question and thus give such interests effective protection, the dictates of both convenience and justice require that there should be a complete decree. For a full discussion of this doctrine we refer to the opinions filed in *Hale* v. *Hale,* 146 Ill. 227, *McCampbell* v. *Mason,* 151 id. 500, and *Gavin* v. *Curtin,* 171 id. 640.

In the case at bar the possible interests of after-born children of Esther C. Smith are identically the same as the interests of her four living children. In the proceedings of the circuit court of Kane county resulting in the decrees of 1912 and 1915, the living children of Esther C. Smith did not declare in the pleadings that the interests of the children of Esther C. Smith yet to be born were the same as their interests, but they declared that the title to the land in question vested in them in fee simple, subject only to the life estate of Esther C. Smith, and that after-born children of Esther C. Smith had no interest whatever in said lands. By the pleadings the interests of the living children of Esther C. Smith were made to appear adverse to the interests of children yet to be born to her, and so the doctrine of representation does not apply. This principle of equity cannot be used by a part of a class to destroy the interests of another part of the same class who are not made parties to the suit. When tenants in common and life tenants seek by proceedings in equity to have their interests in lands defined and set off where persons not *in esse* may have some interest in said lands, it is a reasonable and wholesome requirement for a court of equity to hold that the bill shall clearly and specifically set out the interests of all the parties in the premises, including those of the remainder-men not *in esse,* and that the decree of the court shall designate the interests of such remainder-men not *in esse* and definitely fix their interests in the premises before they shall be bound by any decree which extinguishes or seeks to extinguish their title to the real estate. (*Baker* v. *Baker, 284* Ill. 537.) The decrees were not binding upon the remainder-men not *in esse.* The finding of the chancellor that possibility of issue was extinct in Esther C. Smith is clearly wrong. Nature has fixed no certain age, by years, at which child-bearing capacity in a woman shall begin or end. The law recognizes the possibility of issue in all adult women, and the single fact that terminates the ability to

bear children is death. *Hill* v. *Sangamon Loan and Trust Co.* 295 Ill. 619.

The living grandchildren of Esther C. Smith, executory devisees under the will of David Sholes, deceased, were made parties defendant to the bill filed in 1910 and the bill filed in 1914. Their interests were set forth in the bills, with the further allegation that their interests were a cloud on the title of the living children of Esther C. Smith, and praying that the title be confirmed in said children of Esther C. Smith. A guardian *ad litem* was appointed for the minor grandchildren, who was supposed to represent them and all others of that class and to bring forward all defenses that could be presented. Under the doctrine of representation hereinbefore discussed we must hold that the decree is binding on all the grandchildren of Esther C. Smith, including those who were made parties defendant and those yet to be born.

It is contended by appellee that David W. Sholes and Ernest C. Sholes, sons of David Sholes, deceased, were necessary parties to the proceedings had in 1910 and 1914 for the reason that the property devised by the sixth clause of testator's will would descend as intestate property to the heirs-at-law of the testator in the event that Esther C. Smith died without issue surviving her. This contention is not sound. In the absence of a contrary indication of testamentary intent, a devise of a life estate with a remainder to a class of persons not named but described will vest the remainder at the testator's death in the persons then comprising the class, the right of enjoyment only being postponed. (*Schaefer* v. *Schaefer,* 141 Ill. 337; *Grimmer* v. *Friederich,* 164 id. 245; *Knight* v. *Pottgieser,* 176 id. 368.) As we have said, when the testator died the fee to the lands devised by clause 6 of his will vested immediately in the living children of Esther C. Smith. The fee having passed from the testator, as it did by clause 6 of his will, it can not again return to him or his heirs. If a remainder-man

dies before Esther C. Smith dies, and leaves a child or children living at the time of the death of the life tenant, the interest of the remainder-man is divested and the fee passes to his surviving child or children by executory devise. If the remainder-men die before Esther C. Smith dies, and leave no child or children, the interests of the remainder-men will not be divested and the fee will pass to their heirs. (Kales on Estates and Future Interests,—2d ed.—sec. 597.) If David W. Sholes and Ernest C. Sholes should in any event take this property as heirs, they will take it as heirs of the remainder-men or executory devisees and not as heirs of the testator. The sons of the testator were not necessary parties.

Appellant contends that the unborn children of Esther C. Smith are made parties defendant by the description "unknown owners" and "unknown devisees." Section 7 of the Chancery act provides that in suits to obtain title to lands, if there be persons interested in the same whose names are unknown, it shall be lawful to make such persons parties to such suits or proceedings by the name and description of "unknown owners" or "unknown heirs or devisees" of any deceased person. This statute refers to persons in being and does not refer to possible persons that may never be born.

January 6, 1915, Esther C. Smith and William M. Smith, her husband, Alice J. Carlisle and Harry N. Carlisle, her husband, Lydia E. Oakley and Clifford Oakley, her husband, conveyed by warranty deed, in consideration of $25,000, the property in question to John Weberpals, appellant. This deed was recorded March 4, 1915. On the doctrine of chances appellant will probably never be disturbed in his title, and yet the title is a doubtful one and the chancellor properly denied specific performance.

The decree of the circuit court is affirmed.

*Decree affirmed.*