## Euna S. Jennings et al., Complainants and Appellants, v. Edward R. Hills et al., Defendants and Appellees.

### Gen. No. 31,619.

1. WILLS—*savings effected by purchase of remainder interest as intestate property.* Where property is devised in trust to pay certain annuities, with distribution to be made, after the death of the last annuitant, one-half to the then living descendants of the testator and the other half to charitable corporations, and the widow and other heirs purchase with their personal funds the vested rights of the corporations in the property and future accumulations, held any saving effected by the purchase did not become intestate property for distribution.

2. WILLS—*compromise agreement to sustain contested will.* Where there is a contest over the validity of a will, and there are also family disputes and differences, and a compromise agreement is made between all the beneficiaries of the will whereby a decree should be entered to sustain the will and pay certain beneficiaries money in consideration of their releasing their rights under the will, such a compromise agreement is favored by a court of equity.

3. FORMER ADJUDICATION—*decree in compromise of will contest and family disputes as bar to subsequent attempt to have funds declared intestate property.* Where property is devised in trust to pay certain annuities, with distribution to be made, after the death of the last annuitant, one-half to the then living descendants of the testator and the other half to charitable corporations, and there is a contest of the will, and family disputes, and heirs purchase the vested rights of the charitable corporations with their own funds, and the entire matter is embodied in a compromise agreement which is confirmed by a decree, held, in a subsequent bill to have any savings effected by the purchase of the charitable remainder to be declared intestate property, that the question was *res adjudicata* by the first decree.

4. FORMER ADJUDICATION—*unborn persons bound by decree against ancestors.* Decree confirming compromise agreement of heirs and beneficiaries of testator held binding, not only upon minors at the time of entry, but also upon all persons who had since come into being, having interests identical in character or of the same class.

5. ANNUITIES—*right of testamentary annuitants to increased payment.* Testamentary trustees will not be required to increase annuities created by the will merely because the cost of living has greatly increased since the testator's death, especially where it is not shown that any of the annuitants are in want, and where an increase of the annuities would decrease the amount to be received at the end of the

trust by the testator's descendants, which would be contrary to the testamentary intent.

6.  TRUSTS—*payment of solicitors' fees out of estate funds.*  Where a testamentary trust is created and a bill of complaint does not involve the construction of an ambiguous will and is in the nature of an attack upon the fund in an effort to reduce it, and the services of the solicitors for complainants are not rendered for the advantage of the estate, held proper to refuse to allow the solicitors' fees of the unsuccessful complainants to be paid out of the estate funds.

Appeal by plaintiffs from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the second division of this court for the first district at the December term, 1926. Affirmed.  Opinion filed December 27, 1927.

**Statement by the Court.**  This is an appeal by complainants from a decree of the circuit court, entered October 18, 1926, wherein the court, refusing to follow certain of the master's recommendations, dismissed complainants' bill as amended for want of equity.  The appeal was taken originally to the Supreme Court, but, on December 9, 1926, it was ordered transferred to this Appellate Court.

The prayer of the original bill, filed May 4, 1923, was only that a decree be entered *increasing the annuities* mentioned in the will of Jonathan Clark, deceased, so as to enable complainants "to live in the station of life to which they were born, and in which said Jonathan Clark would desire them to live."  Before the cause was at issue the bill was amended by the additional prayer: "That said estate in the hands of said trustees be partitioned and that *one-half of the estate be distributed to the heirs* of Jonathan Clark, the testator, and for an accounting of the rents and profits received by said trustees."

Neither at the time of this amendment, nor subsequently, were any new allegations pertinent to the additional prayer added to the bill, but complainants contended on the hearing before the master that the evidence showed that, because of certain transactions

and a certain compromise agreement completed by two court decrees, entered respectively in said circuit court on July 29th and November 16th, 1908, a large "saving" resulted to the estate which became "intestate" property and should now be distributed to complainants, as heirs of the testator. The defendants on the contrary contended that there was no saving; that, if there was, it was not intestate property; and, further, that said decrees are *res adjudicata* of the questions.

The master found that by the transactions and settlement there was "saved to the estate of Jonathan Clark, deceased, the sum of $653,747.05," which "became intestate property, and should descend accordingly." The court, upon exceptions, disagreed with the master and held that these findings "were not in accordance with the law or the evidence." The court found that the 1908 decrees were entered in certain consolidated causes; that all persons, who are parties to the present cause, were parties to the consolidated causes or properly represented therein, and that all matters now in issue were in those causes "finally adjudged and determined"; that it has not been shown that when the 1908 decrees were entered there was then, or is now, "any sum whatever which was or is intestate property, or otherwise subject to distribution"; that on the contrary the entire fund in the trustees' hands is in fact, and was then found to be, held by them *"to be distributed at the termination of said trust* as fixed by the will, and not otherwise"; that, by the former transactions and decrees, three charitable corporations, legatees under the will, were paid sums of money, and all their interests in the trust property satisfied and released; that the bargain was not one between the corporations and the trustees, but that on the contrary the sums of money paid "were furnished by the widow and heirs of Jonathan Clark from their personal funds, and did not constitute any

part of the trust estate''; and that the purchase ''has not been shown to be unlawful or prejudicial to the interests of the present complainants.''

On the question whether the annuities given to complainants by the will should be increased, the master found that complainants ''have failed to prove that they are entitled under the law to any increase,'' and the court sustained that finding.

The complainants (except Emmaretta Clark Kauffman, a daughter) are the grandchildren of the testator. The defendants, besides the trustees, are J. Yates Clark, individually, a son of the testator, Caroline Patterson and her adopted son, Edgar C. Patterson, and nine (9) great-grandchildren of the testator, who, being minors, are represented by William R. T. Ewen, Esq., guardian *ad litem.*

Jonathan Clark died February 5, 1902, at the age of 78 years. His will and codicil thereto, both made in 1900, were admitted to probate in the probate court of Cook county on March 28, 1902, and letters testamentary issued to Edwin F. Bayley, Caroline Patterson and George T. Clark, the executors named in the will. He left him surviving as his only heirs-at-law Alice Clark, his widow, Fred W. Clark, George T. Clark and J. Yates Clark, three sons, and Eunice Clark Smith and Emmaretta Clark Kauffman, two daughters. When the present bill was filed only two of these heirs were living. Mrs. Smith died in 1906, Alice Clark, the widow, in 1911, Fred W. Clark in 1916, and George T. Clark in 1918.

In the second article of the will the testator gave to his wife all household furniture, etc., and also the use of the home and all appurtenances so long as she should live. It is stated that he had previously secured to her a considerable income by a conveyance in trust of property of the value of about $50,000. In the third article it is stated:

"Having given much care and thought during many years past to the selection of real estate and the erection of substantial buildings, with the purpose of rendering my estate productive of a certain and increasing revenue from rentals, and believing that it will be for the best interests of the beneficiaries named in this will that the property be held by the trustees, undivided, as long as possible, I give, devise and bequeath all the property of every kind, real, personal and mixed, which I may own at the time of my death (excepting that mentioned in article second of this will), to said Edwin F. Bayley, Caroline Patterson and George T. Clark, as Trustees; to have and to hold the same to them and their successors in trust, for and during the life of the last survivor of my wife and my five children now living and hereinafter named, and for and during twenty years from the time of the death of such last survivor, upon the following trusts."

Then follow directions to the trustees to hold, manage and lease the properties, to collect the rents, income and profits, to pay all ground rents, mortgages and debts and the necessary expenses of the trustees and a reasonable compensation for their services, to pay to Caroline Patterson for her services both as executrix and as trustee, so long as she shall live and act as such, $1,500 per annum, etc.

Then follow directions for the payment out of the net income of certain annuities, viz: To pay, quarterly, $3,000 per annum each to the widow and the five children, and upon the death of any of the children to continue to pay the annual sum to the child or children of the deceased child until the trust period shall end; also to pay, quarterly, $600 per annum to each of the testator's grandchildren, born or to be born, so long as such grandchild shall live and until the trust period shall end; and also to pay to Caroline Patterson $600 per annum, payable quarterly, so long as she shall live. In connection with this last-mentioned an-

nuity it is stated that she has been in the testator's employ for many years and that the provision is intended "as a recognition of her faithful and valuable services." By the codicil to the will this $600 annuity, upon her death, is directed to be paid to her adopted son, Edgar C. Patterson, so long as he shall live and until the trust period shall end. There also are directions for the payment of other annuities to persons who died prior to the filing of the present bill, and that "the surplus" of the net income, not required for the purposes mentioned, may be invested by the trustees from time to time, "either in erection of buildings upon any lands I may hold under ground leases, or may own in fee at the time of my death, or in the alteration, enlargement or improvement of any building owned by me, or in repairing or rebuilding any such buildings as may from time to time be destroyed or damaged by fire or otherwise, or in the purchase of the fee simple title to any of the lands of which I may at the time of my death hold a ground lease, or in safe interest bearing securities." No power of sale is given to the trustees. In the fourth article it is provided:

"At the end of said period of twenty years from the death of the last survivor of my wife and said five children of mine hereinbefore named said trust estate and all of the property and accumulations then remaining in the hands or control of said Trustees, or their successors, not hereinbefore otherwise disposed of, shall be conveyed and distributed by said trustees, or their successors, as follows: One-half thereof to all of my descendants then living, in equal shares; to have and to hold the same to them, their heirs and assigns forever; the other half thereof to the following charitable corporations or their successors, in equal shares, to-wit: THE OLD PEOPLE'S HOME OF THE CITY OF CHICAGO, now located at No. 3850 Indiana Avenue, in Chicago; THE FOUNDLINGS

HOME, now located at 114 South Wood Street, in Chicago, and THE SCHOOL OF AGRICULTURE AND MANUAL TRAINING FOR BOYS, now located at Glenwood, Illinois, said Charitable corporations to have the right to use the income of the property which shall be transferred to them respectively, under the provisions hereof, from year to year, for the purposes of their organizations respectively; but the principal to be kept invested in productive property, or income bearing securities, by the directors or managers of said corporations respectively. My reason for limiting the amount to be paid to my descendants, at the termination of said trust period, to one-half of said trust estate is that I desire to provide a fund for each of such descendants then living sufficient only to enable him, or her to carry on some legitimate business, and not to provide for his or her support in idleness. I have selected said three charitable corporations as beneficiaries hereunder for the reason that I am in sympathy with their purposes, and desire that half of said trust estate existing at the end of said trust period shall perpetually assist in carrying out such purpose."

Following the death of Jonathan Clark much litigation ensued. After the three executors named in the will had applied to the probate court for the issuance of letters to them, objections were filed by the widow and two of the children to Caroline Patterson qualifying as an executor. They claimed that she was not a fit person to serve in that capacity, because of alleged illicit sexual relations had between her and the testator during his lifetime, and because of feelings of hostility existing between her and members of the Clark family. The probate court allowed her to qualify, upon her giving a bond. On appeal to the circuit court this order was confirmed, as it was subsequently in April, 1905, by the Supreme Court on further appeal. (*Clark v. Patterson,* 214 Ill. 533.) In apt time the widow re-

nounced the will and elected to take her statutory share. In July, 1903, some of the heirs filed a bill in the circuit court, No. 240,613, to set aside the will upon various grounds. The widow filed a bill to recover her dower, and also another bill against the executors and trustees to recover about $30,000, claimed to have been taken by the testator from a trust fund for her benefit. George T. Clark, as executor, filed a bill against Caroline Patterson to recover certain moneys claimed to belong to the estate. In May, 1906, the widow applied to the probate court for an order requiring the executors to set apart and pay to her one-third of all the personal property. In December, 1906, after a hearing, that court found that she was entitled to the one-third and that, to enable her to receive it, it was necessary that the leaseholds owned by the testator at the time of his death be sold at public sale, and ordered that the executors make the sales, from which order an appeal was pending. At that time all of the above-mentioned causes (except that concerning the right of Caroline Patterson to act as an executor), and much other litigation affecting the estate, were pending and undetermined. At that time, also, much testimony by depositions had been taken in the suit to set aside the will, but much more was necessary to be taken before there could be a trial on the issues. Some of the parties interested in sustaining the will, including the three charitable corporations, were fearful that it might be set aside. Furthermore, no part of the annuities had been paid; and the accrued sums aggregated nearly $150,000. The sums, accrued and to accrue, might be lost to the annuitants if the will was set aside.

The major portion of the estate consisted of leaseholds, 17 in number, originally running for 99 years, improved with buildings, and all located in Chicago. Two of them, on South Canal street, had been condemned for the terminal station grounds of the Chi-

cago & Northwestern Railroad Company but the money, about $55,000, had not yet been paid. They were parts of the *personal* estate of the testator. (*Zimmermann v. Dawson,* 294 Ill. 380.) They had been valued in the executors' inventory at $428,000. There was other personal property, in the form of chattels and securities, valued at slightly less than $100,000. There was also real estate held in fee, valued at $53,598, which had only produced income enough to pay current charges and cost of maintenance. Under ordinary conditions the value of the leaseholds would continue to depreciate as the years passed. The expectancy of life of the youngest child of the testator, as computed by the regular tables, was 31 years. As the will provided for final distribution to be made 20 years after the death of the last survivor of the widow and the five children, it was probable that such distribution would not be made for 51 years. At the expiration of that time the ground lease having the shortest period to run would have remaining 21 years of life, and at the end of the 21 years it, of course, would cease to exist and the capital represented by it would become extinguished. In like manner, the other leaseholds would cease to exist as capital at the expiration of their terms. It appeared clear that, after the lapse of 51 years of the terms the ground leases, their value under ordinary conditions would have greatly depreciated.

Early in the year 1907, negotiations were had between all interested parties looking to a possible compromise settlement, whereby the following things, *inter alia,* might be accomplished, viz, the dismissal of all pending litigation including the suit to set aside the will, the conveyance to the widow of certain leaseholds and other property in settlement of her claims, the resignation of Caroline Patterson as one of the executors and one of the trustees, the payment of all accrued annuities, and the purchase from the three

charitable corporations of all their interests and rights in the property of the testator under the will—the settlement, if made, to be confirmed by a decree of a court of equity. Because of the uncertainty (if the suit to set aside the will were dismissed) as to how much the charitable corporations might receive from the estate at the end of the trust period (probably 51 years hence), they had taken the position that they would not agree to any settlement unless they could in some way immediately be paid money in consideration of their releasing all their interests in the testator's property. The widow and the other heirs tentatively agreed to purchase, out of their own funds, these interests and rights, in consideration of their release and other considerations. The difficulty was to determine or agree upon the then value in money of these interests and rights. The widow and other heirs finally offered to pay the three corporations $120,000, $40,000 to each, and the offer was accepted. And all parties further agreed that two propositions of settlement, known as Nos. 2 and 3, should be submitted to a court of equity for it to decide which, if either, should be approved and confirmed.

Accordingly, in May, 1907, the widow and three of the testator's children, as complainants, filed a bill in the circuit court, No. 279,244, against the executors and trustees and all other interested parties, as defendants. In the bill, the then situation and the tentative agreements of settlement, as embodied in propositions Nos. 2 and 3, were set forth in considerable detail. The bill prayed in substance that, after all parties in interest were brought into court and after a hearing, the court determine which of the proposed agreements, if either, be the more fair and just and for the best interests of all parties concerned, not only those *in esse* but those unborn, and as a compromise and settlement of family disputes and for the purpose of avoiding public scandal and notoriety, and that the

court by a decree make the compromise agreement effectual. Answers were filed and the cause was referred to a master, who, after a hearing, made a report recommending that the agreement, as stated in proposition No. 3, be approved and consummated.

The essential terms and elements of said proposition No. 3 were (a) that all pending suits, including the one to set aside the will, should be dismissed; (b) that Caroline Patterson should resign as executor and as trustee; (c) that, for the widow's share in the estate and her dower rights, there should be set apart and vested in her (1) a certain leasehold on State street, (2) the "Brother Jonathan" leasehold, (3) the leaseholds on South Canal street, or the $55,000 to be paid therefor as condemnation money, (4) certain lands and buildings known as the "Florida property," and (5) a certain judgment of $7,000 which the executors had recovered; (d) that the three charitable corporations each be paid, by the widow and the other heirs, the sum of $40,000, in full settlement of all their interests and rights in the testator's property, the corporations each to execute and deliver to the trustees a release and satisfaction thereof; (e) that, in consideration of the payments by the widow and heirs to the corporations, there be set apart and vested in the widow, in addition to the property above mentioned as being set apart to her, a certain other leasehold on State street known as the "Follies' Theatre"; and (f) that all accrued annuities be paid to the respective annuitants, as well as those accruing thereafter, out of the net income of the estate.

The chancery cause, No. 279,244, was ordered consolidated with cause No. 240,613 (which involved the validity of the will), and on July 29, 1908, a decree was entered in the consolidated causes. In the decree the court made many findings substantially in accord with the facts as hereinabove stated, detailed at length the terms and elements of the proposed compromise agree-

ment, agreed with the master's recommendations, and ordered and adjudged (1) that "the said compromise agreement  *  *  *  be and the same is hereby approved, ratified and confirmed, not only as between the adult parties to this cause, but in respect to the minors who are interested in said will and the trusts thereunder, and also all those persons who shall come into being hereafter, and who shall have or acquire interests in said trust property under said will, either during the continuance of the trust or at the period of distribution," and (2) that the agreement be carried into effect under the supervision of the master, etc., who is to make a further report, for the court's approval, how the decree shall have been carried into effect. The master made such further report and, on November 16, 1908, the court entered a further decree, approving and confirming the acts and doings of the master in carrying into effect said July, 1908, decree, etc.

In said July, 1908, decree, the court found, *inter alia*, that the interests of all beneficiaries named in the will are "in danger" by reason of said suit to set aside the will; that its trial will cause scandal, reflecting upon the honor of the testator and indirectly upon the Clark family; that much other vexatious litigation is pending; that the executors and trustees have been unable to act harmoniously together; that if the 17 leaseholds (exclusive of those condemned) be sold, in order to provide funds for the satisfaction of the widow's claims, it is evident that the "scheme of the will of the testator" cannot be carried out, since it is contemplated therein that his entire estate, including accumulations, not necessary to pay the annuities, expenses, etc., shall remain in trust until the end of the trust period; that if said leaseholds be sold for the purpose mentioned, the major assets of the estate will then be converted into cash, and the proceeds, less the amount paid to the widow, will have to be invested

in interest bearing securities, but at such a rate as will greatly decrease the income of the estate; that if the will be set aside none of the beneficiaries, including the three charitable corporations, will receive "any of the bounty intended by the testator"; that "there is every reason known to the law for making and establishing a compromise agreement"; that all the heirs and parties interested in the testator's property, except minors, have agreed upon the terms of the compromise agreement, and that the guardian *ad litem* for the minors has advised the court that it is for their best interests; that two of the three trustees have assented thereto; and that the same can be made effectual to amicably settle and terminate all pending litigation, and the disputes and differences now existing, and "to fix and make certain the rights and interests of the several beneficiaries."

And the court found, as other elements of said compromise agreement (in addition to those hereinabove stated), that the claim of Caroline Patterson for disbursements and the claim of her attorney for fees and disbursements, aggregating over $22,000, be paid out of the assets of the estate; that all income which had been received by the trustees since March 1, 1907, out of those leaseholds which were to become vested in the widow should be paid to her; and that this money, as well as all moneys to be received by her as the proceeds of the condemnation of the leaseholds on South Canal street, or from any other source, and also all moneys to be paid to the living children of the testator, or to the adult children of his deceased daughter, Eunice Smith, "are to be treated as pledged for the payment" to said three charitable corporations of said sums of $40,000 each.

And the court further found in said July, 1908, decree that, inasmuch as it is to be entered as well in cause No. 240,613 (the one to set aside the will) as in cause No. 279,244, said decree, when carried fully into

effect, "shall operate as an affirmance in all respects of the documents admitted to probate as the will of said Jonathan Clark"; and that the trust property, not assigned and transferred to Alice Clark, widow, "is hereby established and confirmed in the trustees under said will."

FREDERICK A. BROWN, for appellants; JAMES HAMILTON LEWIS and WM. G. WORTHEY, of counsel.

CUTTING, MOORE & SIDLEY, for defendant trustees; N. G. MOORE, of counsel.

WILLIAM R. T. EWEN, guardian *ad litem*, for minor defendants, appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

The main contention of appellants' counsel is that the circuit court erred in dismissing complainants' amended bill for want of equity, because, by virtue of the transactions and decrees of 1908, the three charitable corporations in consideration of their releases each received $40,000, and there resulted a large "saving" to the estate ($653,747.05, as found by the master) which became *intestate* property and should be distributed accordingly.

When said 1908 decrees were entered the probable termination of the trust under the will of Jonathan Clark was about 51 years thereafter. When that time arrived, as provided in the will, one-half of the property in the hands of the trustees, including accumulations, was to be distributed to his then living descendants, and the other half to the three charitable corporations. And, as we understand counsels' argument, it is that, as at the expiration of the trust period the living descendants were limited to receiving *only one half* of the property, and as the total sum ($120,000) received by said corporations was paid *out of the funds of the estate,* and as said sum was much less

than half of the value of the testator's property in 1908, after taking into account the property set apart to the widow in settlement of her claims, and other proper deductions, the difference (whatever it may be found to have been) between said half of the value of said property and said sum of $120,000 became intestate property and should now be distributed.

We cannot agree with the contention or argument, and, after reviewing the provisions of the will, the 1908 decrees and the evidence, we are of the opinion that the decree, dismissing complainants' bill for want of equity, was warranted under the law and the evidence. And we think that the court's findings in the decree, also, were warranted. Some of these findings are, substantially, that the 1908 transactions and decrees did not result in any saving which became intestate property or otherwise subject to distribution; that, if there was a saving, it, under the terms of the will, could only be distributed at the expiration of the trust period to the then living descendants of the testator; that the widow and the other heirs, by paying $120,000 *from their personal funds* to the three corporations, purchased the then vested rights and interests of the corporations in the testator's property and future accumulations; that the bargain was not one between the corporations and the trustees; that no showing has been made that the purchase was unlawful or prejudicial to the interests of any of the present complainants; and that, in any event, the 1908 decrees are *res adjudicata* of all these questions.

To support their contention appellants' counsel place great reliance upon the case of *Dunham v. Estate of Stephens*, 190 Ill. App. 554, decided by the third district. That case involved the question whether the difference between the amount certain legatees would have received under a will, and the amount for which they sold and assigned their legacies, became intestate property and descended to the testator's heirs-at-law.

CHICAGO—FIRST DISTRICT—DECEMBER, 1927. 113

Jennings v. Hills, 247 Ill. App. 98.

The court held that, as the amount paid to said legatees for their interests under the will came from the *funds of the estate,* and as a large sum thereby was saved to the estate, the money so saved "became intestate estate and should descend accordingly." But the facts, upon which the court's holding was based, differ materially from those in the present case, where, instead of the estate acquiring the interests of the settling legatees, those interests were purchased out of funds belonging to other beneficiaries under the will, and subject to the general trust provisions of the will. In the present case, there was a pending contest over the validity of the will, and also family disputes and differences, and a bargain or compromise agreement was made between all the beneficiaries of the will whereby a decree should be entered sustaining the will, and certain beneficiaries should receive money in consideration of their releasing all their rights and interests under the will. Such compromise agreements are favored by courts of equity. *(Cole v. Cole,* 292 Ill. 154, 165; *Hall v. Hall,* 125 Ill. 95, 101; *McDole v. Kingsley,* 163 Ill. 433, 437.) Furthermore, in the present case, it appears that the bargain (including the other elements of the entire settlement transaction) was confirmed by a decree of a court of equity in July, 1908, and that the bargain, and the entire compromise settlement as agreed to by all parties in interest, was consummated shortly thereafter. In the opinion of the court in the *Dunham* case it appears that the agreement in that case "contains no intimation that any person is to secure the benefit of the assignment of the legacies" of those beneficiaries who settled. In the present case it is otherwise. Under the terms of the will of Jonathan Clark, a trust *for accumulation,* so to speak, was intended and provided for. As stated in the will, he believed it would be for the best interests of the named beneficiaries that his property be held by the trustees "undivided, as long as possible."

He directed that the trust should not terminate until 20 years after the death of the last survivor of his widow and five children. He further directed that the "surplus" of the net income of the property, after paying the expenses, annuities, etc., "may be invested by said trustees from time to time, * * * either in erection of buildings upon any lands I may hold under ground leases, * * * or in repairing or rebuilding any of such buildings, * * * or in the purchase of the fee simple title to any of the lands of which I may hold a ground lease, or in safe, interest bearing securities." In the July, 1908, decree, the terms and elements of the compromise agreement were fully set forth. In addition to those terms and elements, which we have mentioned above in our statement of the case, were the following, as found in said decree:

"The said compromise agreement further contemplates and includes the provision that when the same shall have been carried into full effect by grants, assignments, releases and payments, * * * all the remainder of the said property not conveyed or assigned to Alice Clark shall remain in the hands of the trustees * * * *subject to the trusts of said will in all respects.* (Except in respect to such trusts as are by the will created for charitable uses, which charitable trusts are hereby adjudged to be wholly extinguished so far as concerns the trustees under said will and the other beneficiaries thereunder, by and upon the payment to said charitable corporations of said sum of $40,000 each, as herein provided), said property so remaining in the hands of said trustees under said will to be dealt with as in said will directed, during the entire period of said trust, but that the entire trust property as it then is shall be distributed at the expiration of said trust as required by the terms of said will among the then descendants of Jonathan Clark, but none of any of said corporate legatees, or their successors, or persons claiming under them, * * *."

It thus appears that in the compromise agreement in the present case, confirmed by said decree, it was agreed between all the parties, including the present complainants, that, if there was any "saving" by virtue of said transactions, it was to be treated as a part of the remainder or residue of the testator's estate and should be distributed *at the expiration of the trust period* among the *then living* descendants of the testator.

In the reply brief of complainants' counsel are repeated statements to the effect that the money which was paid to the three charitable corporations belonged "to the estate"; that the widow and other heirs of the testator did not purchase out of their own funds the interests of said corporations under the will; that "the trustees merely traded property for money with which to purchase the charities' interests," and that "the money was provided by the exchanging of the Follies' Theatre property with the heirs for the money the heirs were to receive." We shall not discuss these statements further than to say that in our opinion they are not supported by the evidence, and are contrary to the findings in said July, 1908, decree, and to the order of the probate court, entered when the estate in that court was settled and the executors discharged.

And we are of the opinion that the decree in the present case was correct for the further reason that the former decree of July, 1908, supplemented by the November, 1908, decree, are *res adjudicata* of the questions under discussion, and a bar to the maintenance of said bill, which is in the nature of a collateral attack upon said decrees, from which no appeal was prosecuted and which stand in full force and effect. *(Swiggart v. Harber,* 4 Scam. (Ill.) 364, 371; *Miller v. Rowan,* 251 Ill. 344, 348; *Matthews v. Doner,* 292 Ill. 592, 595; *Beck v. Lash,* 303 Ill. 549, 556.) If any of the parties to said consolidated causes, Nos. 279,244 and 240,613, at the time the July, 1908, decree was

entered, thought that as a result of the transactions and compromise agreement there was any intestate property to be distributed they should then have raised the point, and, not having done so, are in no position to do so now under the present bill. "The doctrine of *res adjudicata* extends not only to every matter that was actually determined in the former suit, but to every other matter which *might* have been raised and determined in it." *(South Park Com'rs v. Montgomery Ward & Co.,* 248 Ill. 299, 312; *Godschalck v. Weber,* 247 Ill. 269, 274; *Tinker v. Babcock,* 204 Ill. 571, 575.) And said decrees are binding not only upon those parties who were minors at the time they were entered, but also upon all persons who have since come into being, having interests identical in character or of the same class. *(Hopkins v. Patton,* 257 Ill. 346, 349; *Weborpals v. Jenny,* 300 Ill. 145, 155.)

Much of the brief of counsel for the defendant trustees presents contentions and arguments showing that the master's finding (that, because of said transactions and decrees of 1908, there was a net "saving" of $653,747.05) was wholly unwarranted under the then existing elements and conditions as disclosed from the evidence, but, in view of our holdings, we deem it unnecessary to discuss those contentions or arguments, or the counter ones advanced by complainants' counsel.

As to the further contention of complainants' counsel that both master and court were wrong in finding that "complainants have failed to prove that they are entitled under the law to any increase in the amount of the annuities received by them," the same is not urged strongly by counsel in their brief, nor was it in the oral argument of the case. Complainants' contention that they are entitled to an increase in the amounts of the annuities, over and above those named by the testator, is based upon the fact that the cost of living has increased greatly since the testator's death in 1902. But this fact cannot justify the court

in virtually making another will than that made by the testator, especially as the evidence does not disclose that any of the present annuitants are in want or that there is any necessity for increasing the annuities. *(Johns v. Johns,* 172 Ill. 472, 485; *Cary v. Cary,* 309 Ill. 330, 335.)   Furthermore, if the court should increase the amounts of the annuities received by the present annuitants, it would decrease the amounts to be received at the expiration of the trust period by the then living descendants of the testator, and this would not be justified under the terms of the will and the evident intention of the testator.   *(Ruggles v. Tyson,* 104 Wis. 500, 520; *In re Ryder,* 11 Paige Ch. 185, 187.)   Counsel admit that they can find ''no case on all fours'' sustaining their contention.

And we do not think that the chancellor erred in refusing to allow to complainants the solicitors' fees of their counsel to be paid out of the funds of the estate.   Their bill did not involve a construction of an ambiguous will, and the services rendered by their solicitors were not rendered for the advantage of the estate in the trustees' hands.   The bill was rather an attack upon the fund in an effort to reduce it.   It did not purport to aid the trustees in their administration of the trust or in their complying with the will of the testator.   *(Wilson v. Clayburgh,* 215 Ill. 506, 507; *Haines v. Hay,* 169 Ill. 93, 97; *Billings v. Warren,* 216 Ill. 281, 288; *Board of Administration v. Stead,* 259 Ill. 194, 210.)

The decree of the circuit court, dismissing complainants' bill for want of equity, should be affirmed, and it is so ordered.

*Affirmed.*

BARNES, P. J., and SCANLAN, J., concur.