In re 1030 NORTH DEARBORN BLDG. CORPORATION.

In re M. STEIN HOTEL CO.

HAFFENBERG v. 1030 NORTH DEARBORN BLDG. CORPORATION et al.

No. 5822.

Circuit Court of Appeals, Seventh Circuit.

Oct. 28, 1936.

188

See, also, 9 F.Supp. 972.

Meyer Abrams, of Chicago, Ill., for appellant.

John S. Lord and Cushman B. Bissell, both of Chicago, Ill., for appellee Ward Castle.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This is an appeal from an order of the District Court directing appellant to pay to Ward Castle, trustee of the debtor, the sum of $2,941.11 which had been retained by appellant as and for his attorney's fees, out of funds belonging to the debtor which were in his possession and control.

The order of the court recites that appellant had theretofore been allowed $3,000 as attorney's fees by the same District Court in another case then pending in the court, which had not yet been paid to appellant. At the request of the trustee of the debtor, the court, in the order appealed from, thereupon ordered that an equitable lien for the judgment of $2,941.11, and interest, should be attached in favor of the trustee to the fees allowed appellant in this other cause.

The facts out of which this controversy arises are substantially as follows: In April, 1931, the Chicago Title and Trust Company, as trustee (hereinafter referred to as the Trust Company), filed in the Superior Court of Cook County, Illinois, a bill to foreclose a trust deed which secured an issue of bonds by the debtor herein. In that proceeding the Trust Company was appointed receiver. On April 6, 1931, the debtor, by appellant, its attorney, filed a petition in that court to remove the receiver and to place the debtor in possession under Smith-Hurd Ill.Stats. c. 22, § 55. On May 6, 1931, an order was entered removing the receiver and directing that the debtor be placed in possession upon the filing of a surety bond in the sum of $15,-000. The bond was filed, with the New Jersey Fidelity and Plate Glass Insurance Company as surety, and it was approved by the court, pursuant to a decree entered on May 6, 1931. That decree provided that the Trust Company should, within two days of the entry of the order, deliver to the debtor, possession and control of the premises involved in the foreclosure proceeding, together with the subject matter of the receivership and of any assets, moneys and all other property and effects pertaining to the premises which were then in the possession and control of the Trust Company, as receiver. It was further ordered that the Trust Company, as receiver, should file its report from the time of its appointment up to and including the time of delivery to the debtor, and that out of the funds thus reported it should retain such fees as should be allowed by the court for its services and those of its solicitors, Nusbaum, Hugg and Sturman.

It was further ordered in that decree that the debtor should account to the Trust Company, as trustee, for property in its control or thereafter coming into its control, and also for all disbursements and expenses made by it in and about the management of the property involved. In addition, the order provided that the debtor should, until the further order of the court, pay to Hartman Wholesale Corporation, Inc., the sum of $1,000 per month, if a sufficient amount of revenue derived from the premises remained after paying the necessary expenses incident to the conservation, operation and maintenance of the premises. It was further ordered that the debtor should file a monthly accounting with the Trust Company, as trustee under the mortgage, for all receipts and disbursements, and should deposit all moneys remaining in its possession after payment of the items last referred to, with the Trust Company, which deposits should be retained by the Trust Company, subject to the further order of that court. This decree was approved by the attorneys for the Trust Company and also by appellant as solicitor for the debtor.

Pursuant to that order, the Trust Company turned over to appellant, as attorney for the debtor, three checks totaling $6,-687.88. One check for $6,000 was made payable jointly to the order of the debtor and appellant as its attorney. The other two checks were made payable to the debtor. All the checks were endorsed by the debtor, by appellant as its duly authorized agent and attorney. Appellant did not deliver the checks to the debtor, but cashed them through his own bank and held the proceeds in his own name. He paid receivership bills aggregating $3,746.77, concerning which there is no controversy here, and retained the balance of $2,941.11 as payment of his attorney's fee for services claimed to have been performed by him for the debtor corporation.

Subsequently, the surety on the debtor's bond failed, and on August 24, 1932, the Superior Court of Cook County, at the request of the debtor, entered an order which was prepared by appellant and was not objected to by any party to that proceeding. In it the court found and adjudged as follows:

"That said defendant Building Corporation has filed with the Chicago Title & Trust Company the monthly statements of its receipts and disbursements in connection with the management and operation of the mortgaged property, as required by the terms of said order, to and including the statement required to be filed on August 1, 1932, and that said defendant has duly accounted for, disbursed, paid out and deposited all of the net income received from said property to and including August 1, 1932, as required by said order and in other respects has fully performed and complied with the terms of said order to and including August 1, 1932;

"That the said New Jersey Fidelity and Plate Glass Insurance Company is now in the hands of a Receiver and that said defendant Building Corporation should be required and permitted to file a new bond, conditioned that said order of May 6, 1931 shall be performed and complied with by said defendant from and after August 1, 1932; that a new bond in the penal sum of Fifteen Thousand Dollars * * * conditioned as aforesaid, has been executed by said defendant Building Corporation as principal and the London and Lancashire Indemnity Company of America, a surety corporation duly authorized to execute bonds in this court, and is now offered to be filed in said cause.

"It Is Therefore, Ordered, Adjudged and Decreed that the said bond so executed by said defendant Building Corporation as principal and said London & Lancashire Indemnity Company of America as surety be, and it is hereby approved and filed herein, and that said bond executed as surety by New Jersey Fidelity and Plate Glass Insurance Company shall be, and it is hereby, released and the said Surety Company discharged from all liability thereunder."

It is contended by appellant that the accounting between him and the trustee under the bond issue was adjudicated by the last order of the state court, and that it is the duty of this court to give full faith and credit to that decree. It is not denied that the court must give full faith and credit to all valid decrees of the state courts. The question here, however, involves the content of that decree and the extent of its intended effect. It is clear under this record that appellant in the first instance was not entitled to retain any fee out of the funds in his possession, until it had been passed upon by the court. It is equally clear that the court never passed on appellant's fee unless it can be considered to have done so by its decree of August 24, 1932, in which it discharged the surety on the bond. In this respect appellant testified:

"Answering categorically as to whether I ever had authority of the court to retain $2941.11, I will answer 'no,' but having answered categorically, I qualify my answer and say that I dealt at that time only with the Chicago Title and Trust Company and its officers and employees as trustee. Answering categorically as to whether the Chicago Title and Trust Company or any of its officers or employees ever authorized me to retain that sum, I will say 'no,' but having answered thus, I would like to explain that answer."

His explanation was that he had discussions with various members of the Trust Company with respect to the amount of fee to be paid him and to the Trust Company and its counsel; that at that time he had filed his bill with the Trust Company for $3,000, but due to an overplus of debts he retained only the amount now in controversy, as payment for the claim which he had filed. He further stated,

"I would not say I had authorization but rather acquiescence by them as to the amount of fees I should receive. The check was made payable to the corporation and to me so I could retain the attorney's fees. I had such arrangements with the President of the corporation to whom I rendered the bill * * * I had no arrangement with the Chicago Title and Trust Company, but I told them in the course of the discussion."

A portion of appellant's testimony on this subject was somewhat controverted. It is unnecessary, however, to consider the evidence in detail because whatever controversy or agreements he may have had with the Trust Company did not authorize him to retain his fee unless authorized by the court.

The exact date on which this claim was presented to the Trust Company is not disclosed by the record other than that it was filed in the early part of May, 1931, and we think the District Court was warranted in concluding that the claim was for services rendered the debtor on and prior to the date of the first decree on May 6, 1931. Under the terms of that decree it is not and can not be contended that the court authorized payment of appellant's fee out of the property and funds turned over to the debtor or from any funds which it might subsequently receive. On the contrary, that order required the debtor to account to the Trust Company, as trustee, for all receipts except certain specified items which did not include appellant's claim. His claim was not an obligation of the receivership. He was the attorney for the debtor and not for the bondholders or the Trust Company. He knew that his claim for attorney's fees against the debtor for services rendered prior to the entry of the order of May 6 was a general claim against the mortgagor, and subordinate to the bondholders' interests in the money which the Trust Company had collected as receiver in the foreclosure proceeding. He further knew that the debtor was bound by that decree to account to the Trust Company as trustee for the bondholders not only for the rents collected by it after it resumed possession of the premises, but also for the moneys received by it from the Trust Company.

It is obvious to us that the state court's order of August 24, 1932, did not adjudicate appellant's right to the attorney's fees which he retained. He was not a party to the foreclosure proceeding in which the bond was released, and he could not be bound or benefited by its provisions. He had made no report to the court which included his claim for attorney's fees and we think the record discloses substantial evidence to the effect that he had never filed his claim with the Trust Company for any fees. It is quite certain that he had never submitted to the state court the report which he filed with the District Court in which he claimed $2,941.11. The decree of August 24, 1932, merely found that the debtor, in compliance with the order of May 6, 1931, had filed monthly statements with the Trust Company and not with the court, and that it had duly accounted for disbursements and deposited all of the net

income received from the property up to and including August 1, 1932. This decree was likewise prepared by appellant and it will be noted therein that he used the word "deposited," which refers, of course, to the deposit which he was required to make with the debtor. In his report to the District Court there was nothing left for deposit with the debtor, for the entire net balance was retained by him as attorney's fee. It must be borne in mind that the object of this order was to release a former bond and to approve a new one, and while that court did release and discharge the first surety from all liability under the first bond, that order did not bind anyone who was not a party to the proceeding. Admitting for the purpose of the argument that the surety was released from all liability, it can not be said that the debtor, who was the principal, was thereby released, or that appellant's claim for fees was adjudicated. From the record, it is obvious that appellant had never informed the court as to the amount of his claim for fees, or that he had such claim, for he admitted that he had never talked to the court about it. Whatever the actions of the Trust Company may have been, the record is not sufficiently clear in this respect to warrant us in saying that those actions were sufficient to adjudicate appellant's claim as against the bondholders and general creditors of the debtor. Certainly, they could not be bound by the order in controversy when they were not parties thereto. Bayley & Sons v. Blumberg (C.C.A.) 254 F. 696; People ex rel. v. Shannon, 302 Ill. 186, 134 N.E. 318; People v. Hart, 332 Ill. 467, 163 N.E. 769. Much less could they be bound by a mere recital of findings which were not included in the ordering part of the decree. Chechik v. Koletsky, 305 Ill. 518, 137 N.E. 419; Weberpals v. Jenny, 300 Ill. 145, 133 N.E. 62.

We are further convinced that the trustee in bankruptcy is not barred by laches from this recovery, because under the terms of the first order, the trustee for the bondholders had no authority to permit appellant to retain any part of the money for his fees. It is also clear that the District Court had jurisdiction of this matter because appellant, by filing his petition in these proceedings, by participating in the hearing, and by insisting that the special master had to determine the question of appellant's liability, all without ob-

jecting to the jurisdiction, thereby consented to the court's exercising jurisdiction over the claim against him.

That the District Court had authority to create an equitable lien on funds in its possession which belonged to appellant, we think there can be no doubt under the ruling in Metcalf Bros. & Co. v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122.

Decree affirmed.